## Greenhouse's Trust Estate.

Argued January 16, 1940. Before MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*William L. Matz*, of *Zoob & Matz*, for appellants.

*Philip Werner Amram* and *Wolf, Block, Schorr & Solis-Cohen*, for appellee, were not heard.

*R. M. Remick*, of *Saul, Ewing, Remick & Saul* and *Carroll Wetzel*, of *Dechert, Smith & Clark*, for appellee, were not heard.

OPINION BY MR. JUSTICE MAXEY, March 25, 1940:

On November 10, 1930, Martin E. Greenhouse executed a deed of trust, the trustees, besides himself, being his attorney, Gordon A. Block, and the Pennsylvania Company for Insurances on Lives and Granting Annuities (hereinafter referred to as The Pennsylvania Company). The settlor caused certain policies of life insurance, as described in "Schedule A" attached to the deed, to be made payable to the trustees, and also assigned to them, as trustees, all his right, title and interest in certain securities, investments and other property, as set forth in "Schedule B" attached to the deed. The equity in these securities was to be held in trust for the settlor for life, with remainder to his widow and children.

Settlor at the time of the creation of the trust was indebted to The Pennsylvania Company, and certain securities listed in "Schedule B" were held by that company as collateral security for the payment of the indebtedness. Certain other securities mentioned in "Schedule B" as being held by the Pennsylvania Company as collateral were actually held by two other banking institutions as collateral security for the payment of indebtedness owing them by the settlor. Shortly after the execution of the deed of trust The Pennsylvania Company paid off the loans to these two banking institutions and the collateral held by them was delivered to the former as additional collateral for the payment of settlor's indebtedness. Greenhouse's debt to the latter company was thereby increased to the extent of the amounts paid to these two institutions, to wit: $84,201.72.

At a meeting held on December 17, 1930, the trustees decided to sell certain stocks and from the proceeds to buy other stocks, which were delivered to The Pennsylvania Company as collateral security for the Greenhouse loan. In February, 1931, after Block had requested and received from The Pennsylvania Company a schedule of

present holdings and values of securities, he wrote to Greenhouse, suggesting that he consider "the advisability of selling some of the securities so as to begin to liquidate The Pennsylvania Company loan." At that time the market was declining. Greenhouse did not act upon this suggestion. Nothing occurred until September, 1931, when, as a result of further substantial declines in the market, The Pennsylvania Company, for the purpose of protecting the collateral loan, sold out a large portion of the securities and applied the net proceeds in reduction of the loan. On April 3, 1937, Greenhouse died, and on July 10, 1937, the remainder of the securities held in trust were sold to help satisfy the claim of The Pennsylvania Company. Because the securities did not yield sufficient to pay in full the indebtedness of the settlor to The Pennsylvania Company, the auditing judge found the balance due the accountant to be $44,408.87, with interest.

All the insurance policies listed in "Schedule A" of the deed of trust lapsed for nonpayment of premiums by the settlor prior to his death, except one in the face amount of $37,000.00. The trustees collected this amount but since it is less than the balance owing by the settlor to The Pennsylvania Company, the latter claimed the entire balance for distribution.

The auditing judge dismissed the exceptions to the account and confirmed it nisi. Exceptions to the auditing judge's decision were overruled by the court in banc. These appeals followed.

The life tenant and the remaindermen under the trust averred that their rights under the instrument were vested and, therefore, they were not bound by any dereliction of the settlor; that the trustees should have sold the securities instead of holding them to pay off the liens on the pledged securities; that the trustees exceeded their authority in purchasing and repledging new stocks (i. e., other than those listed in "Schedule B"); also in pledging or permitting the corporate trustee to

pledge assets for individual loans of the settlor; that the surviving trustee should have applied to the courts for relief when the settlor trustee insisted on a course of action which was against their better judgment; and that it was improper for the corporate trustee to act in a dual capacity, as trustee of any holder of a lien, against the same assets, and therefore should be held liable for losses sustained.

We agree with the court below that the trustees had broad powers and immunities under the trust agreement, which provided, inter alia: "The Trustees shall only be responsible for the exercise of reasonably prudent business judgment. They shall not be responsible for any loss occasioned through any investment or reinvestment, or for any loss occurring through a so-called hazardous investment made by and with the consent of the Settlor." A similar provision is found in *Markle's Estate,* 182 Pa. 378, 38 A. 612, where we said: "It does seem to be futile to undertake to examine through the glasses of an expert the methods of a trustee who holds a patent of authority like this, and to call him to account for what we may even believe to be folly, if it stops short of fraud, when the testator has expressly absolved him from accountability."

The court in banc in its opinion dismissing the exception to the adjudication said, inter alia: "Following the acceptance of their duties, the trustees promptly met, and, having before them full statistical data supplied by the Pennsylvania Company's experts, on all the stocks comprehended in the account, deliberated carefully on what course of action to pursue. The settlor trustee insisted then as he continued to do throughout the life of the trust that he would not in any instance agree to the sale of any stocks unless the proceeds were immediately reinvested in other stocks which had equal or better speculative prospect of enhancement in price, and that the loans for which the stocks were thus held as collateral should not be reduced. A few changes were

made in investments, and, of course, the new stocks were immediately repledged. Later Mr. Block and the corporate trustee exchanged views regarding other changes and attempted to prevail upon the settlor to recede from his speculative attitude and to sell the remaining securities. However, he refused with the result that disaster ensued later in 1931 when a rapidly falling market washed out practically all of the equities in the account. . . . The settlor created this trust with his property and his agreement. It was his free and voluntary act. . . . He chose the corporate trustee whose banking department he likewise selected as pledgee of the stocks, the equity in which was in trust. Therefore, any responsibility for the resulting duality in position of the corporate trustee was his and not the trustees'. . . . Likewise, no responsibility can now be laid at the door of the surviving trustees for failing to take legal action when the settlor refused to follow their advice to sell. He created the trust for *speculative* purposes primarily, and insisted on it being *so operated.* The other trustees, settlor's attorney and his bank, although not agreeing with him, were protected and are now exonerated by the broad terms of the instrument for letting him have his way."

The court below found that all the transactions now complained of were within the scope of the deed of trust. When trustees, as here, manage a trust exactly in accord with its prescriptions and with the instructions and approval of the settlor himself, who is one of the trustees, the trustees, after the death of the settlor, cannot be held liable to the beneficiaries of the trust for losses arising from the sale by the pledgee in the exercise of its rights of certain securities put up as collateral for loans. Here the trust was created for the purpose of continuing the handling of equities in pledged collateral. Now a surcharge against the trustees is asked by the wife and children of the settlor on account of the trustees' failure to sell the collateral and pay off the

loans when, in the light of subsequent events, it would have been good business judgment so to do. Since such a sale would have been contrary to. the purpose and intent of the settlor in creating this trust to handle equities in speculative securities and since no fraud is averred, the court below was right in finding no merit in the exceptions filed by those who are appellants here.

The decree is affirmed at appellants' cost.