**Louis W. SHERWIN, Appellant,**

v.

**The OIL CITY NATIONAL BANK, a National Banking Association; Paul H. Biery and George A. Breene, not individually, but as Executors under the Last Will and Testament of Harry J. Crawford, Deceased; and Citizens Banking Company of Oil City, Pennsylvania, a Corporation.**

**No. 11709.**

United States Court of Appeals Third Circuit.

Argued Dec. 19, 1955.

Decided Feb. 8, 1956.

**836**

John Mulder, Chicago, Ill., Drayton Heard, Pittsburgh, Pa., for appellant.

J. Villard Frampton, Oil City, Pa. (Breene, Brewster & Breene, Frampton & Courtney, Oil City, Pa., Robert M. Dale, Franklin, Pa., on the brief), for appellees Oil City Nat. Bank and others.

McFate, McFate & McFate, William J. McFate, Benjamin G. McFate, Oil City, Pa., William W. Knox, Erie, Pa., on the brief, for appellee Citizens Banking Co. of Oil City, Pa.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

■ This is an appeal from a judgment which dismissed the plaintiff's complaint demanding an accounting from the Executors of Harry J. Crawford, deceased, and charging the other defendant, Citizens Banking Company of Oil City, Pennsylvania, with participating in a breach of trust.[1] The complaint was dismissed on motion of the defendants under rule 12(b) (6) Fed.R.Civ.P. 28 U. S.C. The parties are in federal court by diversity of citizenship only. All the operative facts alleged have a Pennsylvania setting; the only two-state element in the case is the plaintiff's residence in Illinois. We are guided, therefore, by Pennsylvania law.

■ The plaintiff claims the existence of an express trust and violation (but not repudiation) of the duties of a trustee by Harry J. Crawford, alleged by the plaintiff to have become trustee for him. Since the acts complained of took place back in 1928, 1929 and 1930 and the complaint herein was filed on November 1, 1954, it is obvious that the plaintiff must show an express trust or something similar to escape the bar of the statute of limitations.[2] Here the state law gov-

---

1. Sherwin v. Oil City National Bank, D.C. W.D.Pa., 18 F.R.D. 188.

2. In Pennsylvania "[t]he statute of limitations applies to all cases at law and in the orphans' court, and to all cases in equity except those technical and continuing trusts over which equity has exclusive jurisdiction. * * *" Pennsylvania Co. for Insurance on Lives, etc. v. Ninth Bank & Trust Co., 1932, 306 Pa. 148, 155, 158 A. 251, 253.

erns[3] and the defense of the statute of limitations has been raised by the defense in its motion to dismiss. Even if the plaintiff shows an express trust he may well have difficulty in explaining why he is not barred by laches. The defense says he is and that the matter of accounting being one cognizable at law and in equity is governed by the statute of limitations in accordance with our decision in Overfield v. Pennroad Corp., 3 Cir., 1944, 146 F.2d 889, and that of the Supreme Court of Pennsylvania, which we followed, in Ebbert v. Plymouth Oil Co., 1943, 348 Pa. 129, 34 A.2d 493.

■■ We do not get to this question until we have decided that the allegations made by the plaintiff will, if proved, make out the existence of an express trust. At this stage of the litigation we take the plaintiff's statements of fact at their face value. And, as this Court has held on several occasions, "there is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim. * * " Continental Collieries v. Shober, 3 Cir., 1942, 130 F.2d 631, 635; Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580, 581; see also 2 Moore, Federal Practice, ¶ 8.13, p. 1653 (2nd ed. 1948).

■ We turn then to the plaintiff's complaint. It has been drawn by a skillful pleader to make the most of his facts. From the complaint we learn that the plaintiff was and is a Presbyterian minister, from 1915 to 1928 pastor of a church in Oil City, Pennsylvania. Mr. Harry J. Crawford, in his lifetime, was president of the Citizens Banking Company of Oil City and also a large owner of stock in certain named corporations. He was called a "dominant force in Oil City business and banking circles[4] toward support of a strong market for the capital shares of the corporations referred to * * *." Plaintiff, beginning in 1922, borrowed money from Citizens Banking Company and pledged the shares he bought with that bank as collateral for the loans. In 1928 the plaintiff's equity in the collateral was not less than $225,000.

The plaintiff goes on to say that in 1928 he had a conference with Mr. Crawford and told Mr. Crawford that he had decided to sell certain stock rights which he was about to receive with the purpose of reducing his loans at the Citizens Banking Company. Crawford advised him not to take such action and urged him to increase his loans to exercise the stock rights. This the plaintiff did.

The next paragraph of the complaint is really the vital one, we think. Because it is the heart of the plaintiff's case we set it out verbatim. Here it is:

"12. On November 15, 1928, plaintiff had a personal conference with decedent at his office in Oil City National Bank, and again informed him that he had decided to liquidate a sufficient amount of his stocks, held as collateral for his loans originally obtained from Citizens Banking Company, preparatory to going to England to attend lectures at Oxford University. Plaintiff further stated that he wished to have his mind free from any supervision of loan accounts during this period of study. Decedent replied to plaintiff that Citizens Banking Company wanted to keep the loan account of plaintiff; and that, if plaintiff would not sell his stocks so held as collateral or pay the loans, decedent and other officers of Citizens Banking Company would take charge of the loan account and would protect the collateral, regardless of the location of plaintiff's residence. That supervision and protection was confirmed to plaintiff by

---

3. Guaranty Trust Co. of New York v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; Overfield v. Pennroad Corp., 3 Cir., 1944, 146 F.2d 889.

4. Just how wide these circles were is another question. The last census of Oil City shows it as having a population of 20,379.

decedent in the latter's letter addressed to plaintiff on November 14, 1931."

Then the complaint goes on to say that plaintiff refrained from selling his collateral and "permitted the collateral to remain under the care and supervision of decedent and such other officers of the Citizens Banking Company as decedent might select. * * *" He did not liquidate his holdings before going to England. He left with officers of the Citizens Banking Company the keys to his safety deposit box. The box had in it a number of assignments of stocks and powers of attorney signed in blank and promissory notes signed in blank by the plaintiff.

Next the complaint says that Mr. Crawford got himself out of the market prior to the crash in the fall of 1929. He did not, however, take the plaintiff with him. While in the summer of 1929 the market value of the plaintiff's collateral over his loans was $320,000, when the plaintiff's stocks were sold the value had fallen substantially below the face amount of the notes for which the stocks were pledged. In other words, the plaintiff shared the fate of so many amateurs and some professionals who were in the stock market in the boom days of 1929.

Do the facts recited above create, if proved, an express trust? The plaintiff says they do. But we think the very language which a skillful pleader has used shows that even in his own mind there were doubts. The pleadings speak of the decedent having undertaken "confidential fiscal management, in a manner compatible with accepted standards pertaining to the duties of a confidential fiscal manager * * *." The final paragraph demands judgment for an accounting for losses sustained for "breach of the fiduciary relation undertaken in respect to his financial affairs."

But we would not bow the plaintiff out of court by niceties of language. We think the reason he is going to fail here is because his allegations, while claiming a relationship, perhaps a confidential relationship in the nature of an agency, do not create that rather special thing called a trust. This, we think, is not to stick in the bark on words. We think there is an essential difference between an agency and a trust with different legal consequences for each.

■■ It is essential to the creation of a trust that there be (1) a trustee, (2) something held in trust to be called if one pleases "the trust res" and (3) a beneficiary for whom the property is held. The requirement that there be a trustee is one which courts have had before them many times. The general statement is made that a trust will not fail for want of a trustee.[5] The question of identification of the beneficiary of a trust has sometimes made trouble. How clearly must the individual or class be defined?[6] There is no trouble about that here. If there is a trust the beneficiary is the plaintiff, Sherwin. But what is the trust res? What property of his did Sherwin deliver to or grant or make over to Crawford so that the latter became trustee for Sherwin? It is true that a trust may be oral unless the statute of frauds requires a writing.[7] There is no difficulty on that. But we do not find in the transactions set out in the plaintiff's complaint any passing of ownership of anything to Crawford to be held by Crawford for the benefit of Sherwin.

■■ An agent as such is not owner of the principal's property, although he may have powers with respect to it. That is clear.[8] But a trustee is more than an agent. He owns the trust property subject to his duty to hold it for the benefit of the *cestui que trust*.[9] Be-

5. Restatement, Trusts § 2, comment *i* (1935); 1 Scott, Trusts § 101 (1939).

6. See Restatement, Trusts § 112 (1935); 1 Scott, Trusts § 112 (1939).

7. Restatement, Trusts § 39 (1935); 1 Scott, Trusts § 39 (1939).

8. Restatement, Trusts § 8, comment *a* (1935); 1 Scott, Trusts § 8 (1939).

9. See note 8 supra.

cause one man undertakes to look after another's affairs he does not get legal title to the other's property. He may have all the duties of loyalty that go with a confidential agency but he is still not a trustee. The Pennsylvania cases cited by the appellant here all show quite clearly, as they discuss the duties of a trustee to his beneficiary, a conveyance of property in trust to the person charged with the exercise of the trustee's duty.[10] It is quite clear, we think, in the Pennsylvania decisions,[11] as well as those elsewhere,[12] that in order to have a trust there must be property owned by the trustee which he must handle, according to the terms of the trust, for the benefit of someone else. We do not find under the most liberal interpretation of the plaintiff's allegations in his complaint, anything on which that relationship can be founded.[13]

As pointed out above, it is not sufficient that the allegations charge that the confidential agent failed to do his duty. That charge is long since barred by the statute of limitations. And if there is no trust, then, whatever claim the plaintiff may have had against the defendant, is long since barred. Since we cannot see anything out of which a trust can be found we conclude that the district court judge was correct in dismissing the plaintiff's complaint against the Crawford executors. And since one cannot be a party to a breach of trust unless there is a trust, the same conclu-

sion necessarily holds as to the Citizens Banking Company.

The judgment of the district court will be affirmed.

---

10. The conveyance of securities: Lines v. Lines, 1891, 142 Pa. 149, 21 A. 809; Yoder v. Bollinger, D.C.W.D.Pa.1944, 4 F.R.D. 141; In re Greenhouse's Estate, 1940, 338 Pa. 144, 12 A.2d 96 (and the beneficial interest in life insurance policies). The conveyance of real estate: McCollum v. Braddock Trust Co., 1938, 330 Pa. 293, 198 A. 803.

11. Beans v. Bullitt, 1868, 57 Pa. 221; In re Refior, 1947, 160 Pa.Super. 305, 50 A.2d 523; In re Miller's Estate, 1932, 19 Pa.Dist. & Co.R. 141; In re Jenkins' Estate, 1934, 20 Pa.Dist. & Co.R. 671.

12. See, e. g., De Mott v. National Bank of New Jersey, 1935, 118 N.J.Eq. 396, 179 A. 470; Handy v. C. I. T. Corp., 1935, 291 Mass. 157, 197 N.E. 64, 101 A.L.R. 447; Kuck v. Sommers, Ohio App. 1950, 100 N.E.2d 68.

13. "A trust must be created by clear and unambiguous language or conduct; it cannot arise from loose statements admitting possible inferences consistent with other relationships." Bair v. Snyder County State Bank, 1934, 314 Pa. 85, 89, 171 A. 274, 275.