**Michael MEYERS, Individually and as representative of a class, Appellant,**

v.

**PENNYPACK WOODS HOME OWNERSHIP ASSOCIATION and Marion A. Steinbronn.**

No. 76–2223.

United States Court of Appeals, Third Circuit.

Argued March 28, 1977.

Decided July 6, 1977.

Dennis J. Morikawa, Christopher K. Walters, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellant.

John F. Smith, III, William B. Miller, Jr., Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for appellees.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

In this case, we are called upon to determine several significant issues growing out of a civil rights action commenced by Michael Meyers, a Negro, charging Pennypack Woods Home Ownership Association with discrimination against Negroes in housing and membership.

### I.

Pennypack Woods Home Ownership Association ("Pennypack" or "the Association") is a non-profit Pennsylvania corporation organized in 1952 which owns and manages a community of a thousand separate housing units of one, two, and three-bedrooms in northeast Philadelphia. Each resident of Pennypack Woods is a member of and owns a one-thousandth undivided interest in the Association while Pennypack itself holds fee simple title to all the homes. A member of Pennypack enjoys perpetual use of a house pursuant to a "Home Security Policy" so long as he complies with Pennypack's rules and regulations.

The demand for housing at Pennypack exceeds the supply and the Association has developed a complex system for filling vacancies. A member may transfer his Home Security Policy to certain close relatives, such as a parent or child, either by testamentary or *inter vivos* instrument, but such a member-resident may not otherwise "sell" his or her house. Units not transferred to relatives are allocated to Pennypack itself. First preference in disposing of two and three-bedroom units is given to current member-residents of Pennypack whose increased family size qualifies them for larger houses. Second preference is to children of current Pennypack members, thereby giv-

ing children who have not received their parents' house by transfer priority over outsiders in acquiring another Pennypack home. Those units which are filled neither by transfer to a relative nor by allocation to present Pennypack members or their children are then offered to persons who have been interviewed and placed on an approved waiting list. Any house still vacant would then, according to Pennypack's rules, be offered to a list of outsiders not yet interviewed or approved.

On September 6, 1971, plaintiff applied by letter to Pennypack for a three-bedroom house for himself, his mother, and his three younger siblings. Pennypack replied that the list for three-bedroom homes was closed, which was in fact the case.[1] In April 1972, Meyers once again wrote to Pennypack and asked to have his name placed on the waiting list and Pennypack again informed him that the list had been closed prior to his first application. In May 1972, Meyers' counsel made a written demand that Meyers' name be placed on the list ahead of persons applying after September 6, 1971. Pennypack refused to comply with Meyers' demand.

On January 3, 1975, having failed in his efforts to secure Pennypack housing, Meyers brought an action against Pennypack and Marion Steinbronn, its president, in the United States District Court for the Eastern District of Pennsylvania alleging racial discrimination and seeking equitable relief, compensatory and punitive damages and attorney's fees under the Civil Rights Act of 1866, 42 U.S.C. § 1982 (1970), and the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq. (1970). Following a non-jury trial, the district court found that Pennypack had

never had a black member since its inception in 1952 although blacks comprise 34 percent of Philadelphia's population. The court found, however, that

> [t]he absence of black members of Pennypack is largely explained by the fact that few black persons have inquired about or applied for membership in Pennypack.

The district court further found that at all relevant times except for the summer of 1971 when he lived adjacent to Pennypack Woods,[2] Meyers resided in the Bronx, New York, and that he had never sought housing in Philadelphia except for his application to Pennypack.[3] Based on these facts, the court concluded that Meyers was a "tester" rather than a *bona fide* applicant for Pennypack housing.

The district court entered judgment for defendants on three grounds, any one of which, in the opinion of the district court, would alone have furnished sufficient support for the judgment: (1) that Meyers was not a *bona fide* applicant; (2) that both of Meyers' claims were barred by the Statute of Limitations; and (3) that Meyers had failed to prove that defendants had discriminated against him because of his race. Meyers appeals from that judgment.

## II. STANDING

The first issue we must consider is standing. Having found that Meyers was a "tester," the district court held without citation that "[t]he absence of a good faith offer on the part of Meyers is a complete defense to his complaint under the Fair Housing Act of 1968 as well as the Civil

---

1. The three-bedroom list had been closed on August 11, 1971 due to the high demand for three-bedroom houses among the preferred groups of Pennypack members' relatives and current Pennypack members.

 The district court found that of the 27 three-bedroom units vacated between January 1971 and the time of trial, six were transferred to relatives, 20 to current Pennypack members, and the remaining one to a person on the approved list who had applied in 1964.

2. Meyers' family—his mother, younger brother, and two sisters—were at the time living in urban housing in New York.

3. Since the date of his application to Pennypack, Meyers spent one year completing his studies at Antioch College in Yellow Springs, Ohio, three years as a student at Rutgers Law School in Newark, New Jersey, and has since been employed by the National Association for the Advancement of Colored People in New York.

Rights Act of 1866." We need not review the holding that a plaintiff's lack of *bona fides* is a defense to a claim for relief under the Fair Housing Act [4] since we hold in Section III, A, *infra*, that Meyers' claim under that Act is time-barred. However, we are required to review the district court's holding as it applies to sections 1981 and 1982.

■■ The gist of the district court's holding that Meyers' status as a "tester" bars him from relief under sections 1981 and 1982 is, as we understand it, that Meyers lacks the personal interest or stake in Pennypack's policies which is required to give him standing to sue. *See, e. g., Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943).[5] In appealing from this aspect of the district court's decision, Meyers asserts that the court's finding that he was a "tester" is clearly erroneous but we need not review the court's finding of fact. Even assuming *arguendo* that Meyers' application to Pennypack was in fact motivated solely by his desire to test the legality of Pennypack's policies, such a purpose is sufficient to confer standing. *See, e. g., Smith v. YMCA of Montgomery*, 462 F.2d 634, 645–46 (5th Cir. 1972). In *Evers v. Dwyer*, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958) (per curiam), the Supreme Court held that a black plaintiff had standing to maintain a civil rights action even though his purpose in sitting in the white section of a segregated bus was to test the legality of the segregation. The Court reiterated the same principle nine years later in *Pierson v. Ray*, 386 U.S. 547, 558, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). A group of clergymen from various Northern states, *Pierson v. Ray*, 352 F.2d 213, 215–16 (5th Cir. 1965), travelled to Jackson, Mississippi, and entered that city's bus terminal "for the sole purpose of testing their rights to unsegregated public accommodations." The Court held that

> The petitioners had the right to use the waiting room of the Jackson bus terminal, and their deliberate exercise of that right in a peaceful, orderly, and inoffensive manner does not disqualify them from seeking damages under § 1983.

386 U.S. at 558, 87 S.Ct. at 1220 (footnote omitted). We therefore hold that Meyers has standing to maintain his action under § 1982.

## III. STATUTE OF LIMITATIONS

### A. *The Fair Housing Act*

Meyers contends that the district court erred in holding that his Fair Housing Act claim was time-barred by the 180 day limitation of 42 U.S.C. § 3612(a).[6] According to Meyers, not only did the final refusal on the part of Pennypack occur as late as December 1975 but Pennypack's discriminatory acts are also of a continuing nature. For these reasons, Meyers argues that his complaint filed on January 3, 1975, was timely.

---

4. The district court's holding was evidently based on the language of section 3604 of Title 42, providing in part:

 As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—

 (a) To refuse to sell or rent *after the making of a bona fide offer*, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion or national origin.

 (Emphasis supplied).

5. Also inherent in the district court's opinion may be the notion that Meyers' decision to reside in New York moots his claims for injunctive relief. Even if that were so—and we express no opinion—the controversy would still be alive by virtue of Meyers' unresolved claim for damages. *See, e. g. Powell v. McCormack*, 395 U.S. 486, 495–500, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Liner v. Jafco, Inc.*, 375 U.S. 301, 304–09, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964).

6. Section 3612(a) provides in pertinent part:

 (a) The rights granted by sections 3603, 3604, 3605 and 3606 of this title may be enforced by civil action in appropriate United States district courts without regard to amount in controversy and in appropriate State or local courts of general jurisdiction. A civil action shall be commenced within one hundred and eighty days after the alleged discriminatory housing practice occurred . . . . .

Pennypack, on the other hand, maintains that the violations are not continuing and that the last of the alleged discriminatory housing practices was the April 26, 1972, letter sent by Pennypack to Meyers—the final refusal by Pennypack to place Meyers' on the list. Pennypack contends that the complaint was untimely since it was filed more than two and a half years later. Two issues are thus raised: first, whether the alleged violation is a continuing one, and second, whether Pennypack's conduct in December 1974 constituted a violation of the Act.

■ Turning to the first of these issues, we note that Meyers cites no authority for his argument that acts such as those alleged to have been committed by Pennypack may constitute a continuing violation for purposes of the 180 day limitation. Furthermore, all four of the cases which we could find seem to assume without discussion that a violation "occur[s]" and the 180 day period begins to run when an oral or written refusal to rent or sell takes place.[7] We are aware, of course, of the employment discrimination cases dealing with the analogous 180 (formerly 90) day limitation period under Title VII of the Civil Rights Act of 1964[8] which hold that a discriminatory refusal to hire may constitute a continuing violation. See, e. g. Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); Briggs v. Brown & Williamson Tobacco Corp., 414 F.Supp. 371 (E.D.Va.1976); Blank v. Sullivan & Cromwell, 418 F.Supp. 1 (S.D.N.Y.1975). Those cases, however, were class actions involving alleged patterns and practices of discrimination continuing to affect all members of the plaintiff class whereas the instant case concerns a discrete act of alleged discrimination against the individual plaintiff.[9] Cf.

Collins v. United Air Lines, Inc., 514 F.2d 594 (9th Cir. 1975); Loo v. Gerarge, 374 F.Supp. 1338, 1340 (D.Hawaii 1974). In the absence of contrary authority, we are persuaded that the alleged section 3604 violation against Meyers is not a continuing one for purposes of the 180 day limitation period of section 3612(a).

■ We must also reject Meyers' contention that Pennypack's conduct in December 1974 constituted either an independent violation of the Fair Housing Act or the final component of a single violation stretching back to Pennypack's initial refusal to sell Meyers a house in September 1971. The conduct to which Meyers adverts consisted of letters from Pennypack's counsel to Meyers' counsel rejecting the latter's December 1974 demands for redress. If such futile attempts at settlement or negotiation by the alleged injured party were allowed to breathe life into a claim long dead, the 180 day limitation established by Congress would have little significance. Such a tactic, if permitted, would enable a victim of alleged discrimination to circumvent the statute of limitations merely by provoking his adversary into another refusal to sell or rent. We cannot believe that Congress intended the 180 day limitation of section 3612(a) to operate in such a fashion. Cf. United Air Lines, Inc. v. Evans, —— U.S. ——, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Accordingly, we hold that Meyers' claim under the Fair Housing Act is time-barred.

### B. The Civil Rights Act of 1866

■■ The 180 day limitation of the Fair Housing Act has no application to Meyers' claim under the Civil Rights Act of 1866, 42 U.S.C. sections 1981, 1982 (1970). Warren v. Norman Realty Co., 513 F.2d 730, 733

---

7. Jefferson v. Mentzell, 409 F.Supp. 1 (N.D.Tex. 1976); Player v. Alabama, 400 F.Supp. 249 (M.D. Ala.1975), aff'd, 536 F.2d 1385 (5th Cir. 1977); Brown v. Ballas, 331 F.Supp. 1033 (N.D. Tex.1971); James v. Hafler, 320 F.Supp. 397 (N.D.Ga.1970), aff'd, 457 F.2d 511 (5th Cir. 1972).

8. 42 U.S.C. § 2000e–5(e) (Supp. III, 1973), amending 42 U.S.C. § 2000e–5(d) (1970).

9. Meyers brought the instant case as a class action but the district court determined that it could be maintained only as an individual action. Meyers has not appealed from that determination.

(8th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975); *Hickman v. Fincher*, 483 F.2d 855 (4th Cir. 1973); *cf. Young v. Int'l Tel. & Tel. Co.*, 438 F.2d 757 (3d Cir. 1971). Since Congress has provided no federal statute of limitations for sections 1981 and 1982 actions, we must apply "the limitation . . . which would be applicable in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law." *Polite v. Diehl*, 507 F.2d 119, 122 (3d Cir. 1074) (en banc). *See also Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). The present action having been brought in federal court in Pennsylvania, our task is to determine which Pennsylvania statute of limitation would govern similar action under state law in a Pennsylvania state court. The decisions of the federal district courts of Pennsylvania are in conflict on this issue, some favoring Pennsylvania's two year statute applicable to certain actions for personal injury,[10] 12 P.S. § 34,[11] and others favoring Pennsylvania's general six year statute,[12] 12 P.S. § 31.[13] The resolution of this controversy requires that we understand both the essential nature of the federal claim and the operation of the various Pennsylvania statutes.

Turning first to the characterization of the federal claim, we observe that the decisions of the Supreme Court and of the other circuits do not reach any consensus. Actions under sections 1981 and 1982 have been analogized to state law actions for personal injury,[14] breach of contract,[15] trespass and wrongful appropriation of proper-

**10.** *See Presseisen v. Swarthmore College*, 71 F.R.D. 34 (E.D.Pa.1976); *Davis v. United States Steel Supply*, 405 F.Supp. 394 (W.D.Pa.1976); *Wilson v. Sharon Steel Corp.*, 399 F.Supp. 403 (W.D.Pa.1975), *aff'd in part, vacated in part, and remanded for further consideration of the statute of limitations question*, 549 F.2d 276 (3d Cir. filed January 27, 1977); *Gozdanovic v. Civil Service Comm.*, 361 F.Supp. 504 (W.D.Pa. 1973).

**11.** The Act of June 24, 1895, P.L. 236, § 2 provides:

Limitation in cases of personal injury
Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law.

**12.** *See Dupree v. Hertz Corp.*, 419 F.Supp. 764 (E.D.Pa.1976); *Beamon v. W. B. Saunders Co.*, 413 F.Supp. 1167 (E.D.Pa.1976); *Dudley v. Textron, Inc.*, 386 F.Supp. 602 (E.D.Pa.1975); *Jones v. United Gas Improvement Corp.*, 383 F.Supp. 420 (E.D.Pa.1974); *Yatzor v. Allen*, 365 F.Supp. 875, 876 (W.D.Pa.1973), *aff'd*, 503 F.2d 1400 (3d Cir. 1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1130, 43 L.Ed.2d 401 (1975).

**13.** The Act of March 27, 1713, provides in pertinent part:

Personal actions, when to be brought All actions of trespass quare clausum fregit, all actions of detinue, trover and replevin, for taking away goods and cattle, all actions upon account and upon the case (other than such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants), all actions of debt grounded upon any lending or contract without specialty, all actions of debt, for arrearages of rent, except the proprietaries' quitrents, and all actions of trespass, of assault, menace, battery, wounding and imprisonment, or any of them, which shall be sued or brought at any time after the five and twentieth day of April, which shall be in the year of our Lord one thousand seven hundred and thirteen, shall be commenced and sued within the time and limitation hereafter expressed, and not after; that is to say, the said actions upon the case, other than for slander, and the said actions for account, and the said actions for trespass, debt, detinue and replevin, for goods or cattle, and the said actions of trespass quare clausum fregit within three years after the said five and twentieth day of April next, or within six years next after the cause of such actions or suit, and not after
. . . . .

**14.** *Runyon v. McCrary*, 427 U.S. 160, 179–81, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (relying on the Fourth Circuit's expertise in Virginia law).

**15.** *Sims v. Order of United Commercial Travelers*, 343 F.Supp. 112, 115 (D.Mass.1972); *Page v. Curtiss-Wright Corp.*, 332 F.Supp. 1060 (D.N.J.1971); *cf. Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 n. 7 (1975).

ty,[16] defamation and intentional infliction of mental distress,[17] or to some unspecified tort.[18] *See* Annot., *State Statutes of Limitations As Affecting Federal Civil Rights Actions Under 42 U.S.C. § 1981*, 29 A.L.R. Fed. 710 (1976). Furthermore, each aspect of a complaint under sections 1981 or 1982 may be given separate statute of limitations treatment depending on the nature of the specific act or acts complained of. *Smith v. Olinkraft, Inc.*, 404 F.Supp. 861 (W.D.La.1975); *cf. Polite v. Diehl*, 507 F.2d 119, 122–23 (3d Cir. 1974) (en banc).

We begin our consideration of possible state law analogies to Meyers' action by observing that the allegations of his complaint sound in tort, not in contract. Although the complaint may be read as alleging a wrongful refusal to enter into a contract, it cannot possibly be construed as alleging the breach of any existing contract. Meyers' cause of action arises not from a breach of promise but from a breach of duty. It must therefore find its analogy in some sort of action in tort. *Cf. Sewell v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Wrkrs.*, 445 F.2d 545, 548–50 (5th Cir. 1971), *cert. denied*, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972). The determination that the action sounds in tort is only the first step, however; we must identify the specific state tort most similar to the acts alleged in the complaint. We can best assess the similarity of the various state law torts to Meyers' federal claim from three perspectives: (1) the defendant's conduct, (2) the plaintiff's injury, and (3) the relief requested.

Relying on the dictum in *Curtis v. Loether*, 415 U.S. 189, 195–96 n. 10, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), Pennypack urges that for statute of limitations purposes we treat Meyers' complaint as if it alleged defamation or intentional infliction of mental distress. Without expressing any opinion as to whether that analogy might be appropriate for other actions under sections 1981 or 1982 complaining of different sorts of conduct, we decline to adopt it in the case *sub judice*. Meyers' complaint may peripherally encompass the emotional or psychic injury which he may have suffered, but its averments are directed to a specific concrete injury: Meyers wants to buy a house in Pennypack Woods and Pennypack will not sell him one. Pennypack's conduct bears little resemblance to defamation or to an intentional infliction of mental distress. Meyers' injury is primarily tangible, not intangible; and Meyers wants both a house and damages for the deprivation he has endured. For these reasons, we do not believe that Meyers' suit can be properly treated as an action for defamation or for intentional infliction of mental distress.

■ We are also not persuaded by Pennypack's suggestion that Meyers' action should be analogized to a state law action for invasion of privacy. Although an invasion of privacy also may produce mental anguish, the essence of the injury is an unreasonable interference in making known a person's affairs to others or exhibiting his likeness to the public. *See* Restatement of Torts § 848; *Hull v. Curtis Publishing Co.*, 182 Pa.Super. 86, 125 A.2d 644 (1956). On the other hand, the gravamen of the injury alleged here is the tortious refusal to contract for the sale of a house. Flowing from both injuries—the invasion of privacy and the refusal to enter into a contract—may be a painful mental reaction, but this commonality hardly affords a sufficient basis for equating the breach of duty in the two instances. Pennypack's conduct bears little resemblance to an invasion of another's privacy.

16. *Kittrell v. City of Rockwall*, 526 F.2d 715 (5th Cir. 1976).

17. *Curtis v. Loether*, 415 U.S. 189, 195–96 n. 10, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (dictum not addressed to statute of limitations issue).

18. *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973); *Sewell v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Wrkrs.*, 445 F.2d 545 (5th Cir. 1971), *cert. denied*, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972); *Buckner v. Goodyear Tire & Rubber Co.*, 339 F.Supp. 1108 (N.D.Ala.1972), *aff'd*, 476 F.2d 1287 (5th Cir. 1975).

Having concluded that Meyers' actions cannot be equated with an action for defamation, for mental distress, or for invasion of privacy, we turn our attention to another group of torts recognized by Pennsylvania law—torts such as fraudulent interference with contractual rights [19] wrongful interference with another's business,[20] violation of seniority rights,[21] and breach of an express trust.[22] All these torts involve the wrongful interference with another's financial, commercial, or business rights. A victim of one of these torts suffers not so much from an emotional or mental trauma as he does from the actual denial of his right to lawfully pursue his business, employment, or personal affairs. Meyers appears to complain of just such a denial.

To be sure, Meyers has also allegedly suffered injury to his "feelings" but the thrust of his complaint, cf. McCully-Smith, supra, is that Pennypack wrongfully interfered with and deprived him of his federally protected right to contract for the purchase of a home. We must therefore apply the statute of limitations which Pennsylvania courts apply to state law actions complaining of similar tortious conduct.

 The Pennsylvania scheme of limitations is complex. The Act of March 12, 1713, 12 P.S. § 31, see note 13 supra, established inter alia a single six year limitation governing all actions in contract as well as all actions of trespass.[23] The Act of June 24, 1895, 12 P.S. § 34, see note 9, supra, without reference, however, to the former act, provides a two year limitation on actions for personal injury not resulting in death. Faced with this incongruity, the Pennsylvania Supreme Court has held that the Act of 1895 repealed the Act of 1713 insofar as relevant but that the Act of 1713 still governs all actions in trespass not involving personal injury.[24] See Walker v. Mummert, 394 Pa. 146, 146 A.2d 289 (1958); Helmig v. Rockwell Mfg. Co., supra, 389 Pa. 21, 131 A.2d at 626 n. 3, 628. Thus, Meyers' action is governed by the general six year statute, section 31, unless it falls within the precise terms of the more limited two year statute, section 34.

Even without the benefit of the numerous cases on point, we would be inclined to conclude as a matter of statutory construction that Meyers' claim does not come within the limited compass of section 34. First, that section by its terms applies only to "actions brought to recover damages" whereas Meyers seeks a broad range of equitable relief. See Jones v. United Gas Improvement Corp., 383 F.Supp. 420 (E.D. Pa.1975). Secondly, the statutory phrases "injury wrongfully done to the person, in cases where the injury does not result in death" expresses a limitation only on actions for bodily injury [25] whereas Meyers' claim is for tortious interference with his right to contract for the purchase of a house. See Jones, supra.

We need not base our decision on such considerations, however, since the case law is clear. In state law suits resembling Meyers' action, both Pennsylvania courts and federal courts applying Pennsylvania law have uniformly applied the six year limita-

---

19. Helmig v. Rockwell Mfg. Co., 389 Pa. 21, 131 A.2d 622 (1957).

20. McCully-Smith Assoc., Inc. v. Armour & Co., 358 F.Supp. 331 (W.D.Pa.1973); Cooper v. Fidelity-Philadelphia Trust Co., 201 F.Supp. 168 (E.D.Pa.1962).

21. Falsetti v. Local 2026, UMW, 249 F.Supp. 970 (W.D.Pa.1965), aff'd, 355 F.2d 658 (3d Cir. 1966); Haefele v. Davis, 399 Pa. 504, 160 A.2d 711 (1960).

22. Sherwin v. Oil City Nat'l Bank, 18 F.R.D. 188 (W.D.Pa.), aff'd, 229 F.2d 835 (3d Cir. 1956).

23. The Act of April 25, 1850, 12 P.S. § 32 provides a one year limitation for slander and libel actions.

24. For this reason, the mere identification of a civil rights action as sounding in tort does not determine whether section 31 or section 34 applies. See Wilson v. Sharon Steel Corp., 549 F.2d 276 (3d Cir. 1977).

25. We are aware, however, that in one case, a Pennsylvania intermediate appellate court applied section 34 to an action for invasion of privacy. See Hull v. Curtis Publishing Co., 182 Pa.Super. 86, 125 A.2d 644, 649 (1956).

tion of section 31.[26] *See McCully-Smith Assoc., supra,* 358 F.Supp. at 332; *Falsetti, supra,* 249 F.Supp. at 972; *Cooper, supra,* 201 F.Supp. at 170 n. 3; *Sherwin, supra,* 18 F.R.D. at 194; *Haefele v. Davis,* 399 Pa. at 511, 160 A.2d at 714; *Helmig, supra,* 389 Pa. at 28 n. 3, 131 A.2d at 626 n. 3. *Cf. Gainey v. Brotherhood of Rwy. and Steamship Clerks,* 275 F.Supp. 292, 306 (E.D.Pa. 1967), *aff'd,* 406 F.2d 744 (3d Cir. 1968), *cert. denied,* 394 U.S. 998, 89 S.Ct. 1590, 22 L.Ed.2d 775 (1969). We therefore conclude that Meyers' action under §§ 1981 and 1982 is not time-barred.[27]

## IV.

■ We have determined that Meyers had standing to maintain his action and that his claim under the Civil Rights Act of 1866 was not time-barred. Nonetheless, we are unable at this time to review the district court's judgment that plaintiff suffered no discrimination because the district court excluded two key witnesses offered by Meyers on the ground that they were not listed in plaintiff's pretrial memorandum. Although a trial court's ruling excluding evidence because of the failure of counsel to adhere to a pretrial order will not be disturbed on appeal absent a clear abuse of discretion, *De Laval Turbine, Inc. v. West India Indus., Inc.,* 502 F.2d 259 (3d Cir. 1974); *Moore v. Sylvania Elect. Prods.,*

*Inc.,* 454 F.2d 81 (3d Cir. 1972), we are constrained to conclude that the exclusion of these two witnesses did constitute such an abuse.

The district court had directed (1) that all discovery be completed by January 30, 1976, (2) that plaintiff file his pretrial memorandum, including a list of his expected witnesses, by January 15, 1976, and (3) that defendant file its pretrial memorandum, including its expected witnesses, by February 2, 1976. Plaintiff timely filed his pretrial memorandum listing seven witnesses and on February 23, 1976, a pretrial conference was held and trial was scheduled for March 17, 1976. Three days later, February 26, 1976, plaintiff, evidently having learned of potential new fact witnesses, sent a letter to defendant's counsel with copy to the trial judge informing him that he wished to supplement the pretrial memorandum with the names of the following witnesses whom plaintiff might call at trial:

Donald Sweeney
Mr. and Mrs. Morris Milgram
Custodian of Records of Pennypack Woods Home Ownership Association

The letter concluded with the following invitation: "If you have any questions concerning the above, please do not hesitate to contact us." Donald Sweeney was Pennypack's former president and then resided in

**26.** Although not a basis of our decision, we are mindful of two policy considerations which support the result we reach. First, as the court observed in *Dudley v. Textron, Inc.,* 386 F.Supp. 602, 606 (E.D.Pa.1975), a section 1981 violation typically involves "patterned-type behavior, frequently involving documentary proof." The same thing might be said of a section 1982 action such as the instant one which depends heavily on statistical evidence. "[T]he passage of time is less likely to impede the proof of facts" in a section 1981 or section 1982 action than in a state law physical injury action or a federal action under 42 U.S.C. § 1983, for example, and a longer statute of limitations may be appropriate. *Id.*

Secondly, although it might appear at first blush that the application of a shorter statute would tend to limit the number of cases on the federal docket, the opposite result may in fact be reached. If the two year statute were applied, a plaintiff would be pressured into filing his civil action in the district court before he

had exhausted his remedies under the Fair Housing Act or Title VII of the Civil Rights Act of 1964. With a six year limitation, a plaintiff can afford to wait until the disposition of his administrative action is clear before considering an action in the courts. *See Beamon v. W. B. Saunders,* 413 F.Supp. 1167 (E.D.Pa.1976); *Accord, Dupree v. Hertz Corp.,* 419 F.Supp. 764 (E.D.Pa.1976).

**27.** We do not now hold that all actions in the federal courts of Pennsylvania under sections 1981 and 1982 are governed by the six year limitation of section 31. As previously discussed, each action and even individual aspects of the same action may be treated differently for statute of limitations purposes. We now decide only that section 31 applies to actions under sections 1981 and 1982 alleging a wrongful refusal to sell or rent housing. We also need not decide at present whether the six year period of section 31 begins to run at the time of the first refusal or the final refusal since Meyers' action is timely under either approach.

Pittsburgh, Pennsylvania. Milgram was a developer of integrated communities who lived in Green Belt Knoll adjacent to Pennypack. Defendant neither accepted the invitation of plaintiff's counsel to contact him nor attempted to depose the new witnesses but by letter dated March 3, 1976, to the trial judge pleaded prejudice and surprise.

When the case was called for trial on March 17, plaintiff called Sweeney and Morris Milgram. According to counsel for Meyers, they would have testified that in past years Negroes had inquired or unsuccessfully applied for housing at Pennypack and that Pennypack had a reputation in the black community as an all white development in which Blacks could not buy homes.

Pennypack objected to testimony of these two witnesses because they had not been previously listed in the pretrial memorandum and because their testimony now came as a surprise and was prejudicial since defendant had not had the opportunity to depose them and ascertain in advance what they proposed to say. Plaintiff responded that his letter to defense counsel afforded him "every opportunity" but no request was ever made for information as to what the witnesses would testify.[28] The trial judge sustained defendant's objection and excluded the witnesses.

A reading of the district court's opinion demonstrates how important such testimony might have been and how critical is its absence. The district court's conclusion that Pennypack did not discriminate against Meyers was based in large measure on the premise that Pennypack's policies had no discriminatory effect against Blacks in general. That conclusion was in turn predicated on the court's finding of fact that the potentially significant statistical absence of black residents in Pennypack was not the result of discrimination but

rather was a product of complete disinterest by Blacks in residing in Pennypack. Evidence tending to prove that the absence of Blacks was not due to a lack of interest conceivably could have led the judge to conclude that Pennypack's policies were intentionally discriminatory or, at least, discriminatory in their effect, and might ultimately have led to a judgment in Meyers' favor. Given these facts, the question is whether the district court's exclusion of Sweeney and Milgram constituted an abuse of discretion.

Decisions of this and other courts suggest the factors to be considered in resolving this question: bad faith on the part of the party seeking to call witnesses not listed in his pretrial memorandum; see Clark v. Pa. R.R. Co., 328 F.2d 591 (2d Cir. 1964), cert. denied, 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1965); ability of the party to have discovered the witnesses earlier, see Hunt v. Pa. R.R. Co., 41 F.R.D. 349 (E.D.Pa.1967); validity of the excuse offered by the party, Thompson v. Calmar Steamship Corp., 331 F.2d 657, 662 (3d Cir. 1964); willfulness of the party's failure to comply with the court's order, Taggart v. Vermont Transportation Co., 32 F.R.D. 587 (E.D.Pa.1963), aff'd 325 F.2d 1022 (3d Cir. 1964); the parties' intent to mislead or confuse his adversary, Pakech v. American Export Isbrandtsen Lines, Inc., 69 F.R.D. 534 (E.D.Pa.1967); and finally, the importance of the excluded testimony, Clark, supra. Underlying the cases to which we have adverted are these basic considerations: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or

**28.** Meyers also pointed out in the interest of fairness that the district court's order of November 18, 1975, fixing time limits for discovery and the filing of pretrial memoranda required plaintiff to file his pretrial memoranda and list of witnesses before discovery was closed whereas defendant was not required to file his memorandum and list of witnesses until February 2, 1976, after depositions had been closed and when plaintiff could no longer depose defendant's witnesses. While it appears that this order thus placed plaintiff at a decided disadvantage, we fail to see its relevancy to the issue at hand.

willfulness in failing to comply with the court's order.

██ Applying these considerations in the instant case, we are constrained to conclude that the district court abused its discretion in excluding Sweeney and Milgram. Pennypack made no allegation and the district court made no finding that Meyers' failure to include Sweeney and Milgram in his list of witnesses either in his original pretrial memorandum or in his amended pretrial memorandum of February 23 was a product of bad faith nor that Meyers' failure to comply with the order was willful or intended to mislead or confuse Pennypack. The excuse offered by Meyers for his failure to list the witnesses was apparently a bona fide representation that he had not discovered them until after the pretrial memorandum was filed. We have recently held that the exclusion of critical evidence is an "extreme" sanction, *Dudley v. South Jersey Metal, Inc.,* 555 F.2d 96, at 99 (3d Cir. 1977), not normally to be imposed absent a showing of willful deception or "flagrant disregard" of a court order by the proponent of the evidence. In the instant case, neither the district court not Pennypack found or alleged such misconduct by Meyers. *Id.* In *Dudley, supra,* we recognized that counsel for the defendant had by his answers to certain interrogatories created confusion and uncertainty but we also observed that the plaintiff's assertion of surprise and prejudice had to be viewed in the context of the plaintiff's own failure to take any steps to clarify the facts.

The instant case presents a similar situation. The February 26 letter from Meyers' counsel, even though it was written almost three weeks before the commencement of trial, may have complicated the trial preparation of his adversary but Pennypack's counsel for his part made no attempt to simplify matters by responding to plaintiff's offer to furnish information or by initiating further discovery.

Weighing against these factors were the alleged prejudice to Pennypack and the possible disruptive effect of waiving the rule. On examination, however, neither of these factors appears significant in this case. The possible prejudice to Pennypack was minimized not only by Pennypack's familiarity at least with Sweeney, its former president, but by the sequence of events. The letter to which Pennypack objected so strenuously followed by only three days Meyers' filing on his amended pretrial memorandum to which Pennypack voiced no objection. More importantly there remained *after* the letter was sent almost three weeks before trial. Yet Pennypack made no effort to depose or serve interrogatories on the new witnesses or even to request Meyers' counsel to furnish additional information or written statements of the proposed testimony. We believe that in these circumstances Pennypack had some obligation to take steps to minimize its alleged prejudice and surprise. We are also persuaded that the orderly and efficient trial of other cases in the court and of this case in particular would not have been seriously impeded by the relaxation of the trial order. It would have been entirely appropriate for the district court to impose reasonable sanctions on Meyers for his failure to list the witnesses, but we believe a less drastic sanction, especially since it was a bench trial, should have been adopted—perhaps, an adjournment of a few days while Pennypack conducted discovery with costs taxed to Meyers. *Dudley, supra,* at 100.

For these reasons, we hold that the district court abused its discretion in excluding the testimony of Sweeney and Milgram. Since this is not a jury trial, it may be feasible simply to reopen the trial for additional testimony rather than to hold an entire new trial.[29] We encourage the district court to consider this possibility.

V.

The judgment of the district court will be affirmed in part and reversed in part and

---

**29.** We anticipate that the district court will afford Pennypack an opportunity to depose Mr. Sweeney and Mr. Milgram before reopening the case and also allow Pennypack to call rebuttal witnesses.

the case remanded for further proceedings not inconsistent with this opinion. Each party to bear his or its costs.

WEIS, Circuit Judge, concurring and dissenting:

I join in Parts I, II and III of the majority opinion. However, I am unable to agree with the majority view in Part IV that the trial judge's refusal to allow two proposed witnesses to testify was an abuse of discretion.

On numerous occasions, this Court has held that the determination as to whether a party should be held to pretrial orders is within the discretion of the trial judge. Absent a clear abuse of that discretion, we will not interfere with such rulings. *See, e. g., De Laval Turbine, Inc. v. West India Industries, Inc.,* 502 F.2d 259 (3d Cir. 1974); *Moore v. Sylvania Electric Products, Inc.,* 454 F.2d 81 (3d Cir. 1972); *Ely v. Reading Company,* 424 F.2d 758 (3d Cir. 1970). That principle should be applied here.

The plaintiff filed an amended pretrial memorandum on February 23, 1976, and a pretrial conference took place on that day. The letter from plaintiff's counsel listing four additional witnesses was dated February 26, 1976. The record does not reveal when it was delivered to defense counsel, but the objection dated March 3, 1976 followed soon thereafter.

Under local Rule 7 of the district court, only witnesses listed in the pretrial order will be permitted to testify except to "prevent manifest injustice." The trial judge noted that the rule was designed to give both sides an opportunity to explore the facts in the case and that it was unfair to bring in a witness at the eleventh hour when the other party could not arrange for a deposition.

The majority faults defendant for not contacting plaintiff's counsel to secure information from him, not initiating further discovery, or taking other steps to minimize prejudice. In short, the burden is placed on the defendant to cure a situation brought on by the plaintiff's dereliction. The record contains no explanation of when plaintiff first learned of the witness, particularly if his identity were discovered before February 23, the date of the pretrial conference; or why plaintiff did not request an amendment of the pretrial order or a further pretrial conference. Conspicuously lacking also is the justification plaintiff had for his failure to be prepared for pretrial as required by the court's order of November 18, 1975.

Since the time for discovery fixed by the court had expired, defendant was not free to depose the four proposed witnesses in the absence of a court order. Under the circumstances, one would have expected the plaintiff at least to have delivered a statement of the proposed witnesses' testimony and an offer to arrange for depositions, if agreeable to the court. Plaintiff did nothing, choosing instead to wait until the day of trial for a ruling from the court. I find no abuse of discretion on this record and, therefore, do not agree with the majority's remand order. Since I am in the minority, however, and the remand will take place, I note my concurrence with Judge Rosenn's suggestion that because this is a non-jury trial, a limited reopening may suffice.

In view of the remand order, it is not appropriate for me to express my views on the other serious issues not reached by the majority and the ultimate disposition of the case.