Frank E. LAWRENCE

v.

UNITED STATES of America, Interstate Commerce Commission, Anthony W. Bummara, Joel Burns, William Love and Lewis Teeple.

Civ. A. No. 80–3321.

United States District Court,
E.D. Pennsylvania.

June 8, 1982.

On Motion for Summary Judgment
Dec. 29, 1982.

Kathleen M. Lynch, Lawrence J. Fox and Louis T. Bologini, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

James G. Sheehan and Alexander Ewing, Jr., Asst. U.S. Attys., Philadelphia, Pa., for defendants U.S., Anthony W. Bummara, Joel Burns, William Love and Lewis Teeple.

Charles A. Stark, I.C.C., Washington, D.C., for I.C.C.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

The plaintiff in this case was formerly employed by the Interstate Commerce Commission. He seeks "compensatory and punitive damages, reinstatement, transfer and backpay for the intentional, wanton and malicious violation of his constitutional rights under the First Amendment."[1] Presently before the Court is defendants' Amended Motion To Dismiss.

### I. FACTS

Plaintiff was formerly employed as a special agent at the Interstate Commerce Commission (ICC) in Philadelphia.[2] In early 1976, at the request of Congressional investigators, plaintiff wrote a letter to the Subcommittee on Oversight and Investigations of the Commerce Committee of the House of Representatives. This letter presumably contained information of what plaintiff considered to be "certain misdeeds" at the ICC.[3] The contents of this letter came to the attention of the defendants. As a result of supplying this infor-

mation to the Congressional committee, plaintiff was "harassed and tormented" by defendant Bummara with the knowledge and encouragement of defendants ICC, Burns, Love and Teeple.[4] This harassment of the plaintiff occurred during the period from February, 1976 to March, 1977. The complaint alleges that this campaign of harassment resulted in the infliction of severe emotional distress upon the plaintiff injuring his emotional and physical health and compelling him to retire. Specifically, paragraph fourteen of the Amended Complaint states:

> As a result of Defendant Bummara's retaliatory harassment and extreme and outrageous conduct, Plaintiff developed a life threatening heart condition, suffered emotional distress, humiliation and embarassment, and experienced a heart attack.

Plaintiff took a medical disability retirement on August 26, 1977 due to his heart condition "caused by Defendant Bummara's retaliatory harassment and extreme and outrageous conduct."[5]

Plaintiff has grounded jurisdiction upon the general federal question statute, 28 U.S.C. § 1331; the Mandamus Act, compelling an officer or employee of the United States to perform a duty owed, 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C. § 701 et seq.

In their motion defendants urge numerous grounds for dismissal of plaintiff's amended complaint, respecting this Court's subject matter jurisdiction over the action as well as the question of whether the Amended Complaint states a claim upon which relief can be granted. Because differing bases for relief apply to the individual defendants as opposed to the governmental defendants, (the United States of

---

1. Amended Complaint, Docket Entry No. 8, ¶ 1.

2. The facts related herein are gleaned from the Amended Complaint for purposes of this motion are accepted as true. *Estelle v. Gamble,* 429 U.S. 97, 99, 97 S.Ct. 285, 288, 50 L.Ed.2d 251 (1976), *reh. denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 *citing Cooper v. Pate,* 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

3. *See* Amended Complaint, ¶¶ 7–8.

4. Amended Complaint, ¶ 9.

5. *Id.,* ¶ 16.

America and the Interstate Commerce Commission), they will be treated separately.

### Individual Defendants

██ Defendants urge dismissal of plaintiff's First Amendment claims on grounds that the allegations of the Amended Complaint do not constitute actionable violations of plaintiff's First Amendment rights and consequently, there is no federal question jurisdiction under 28 U.S.C. § 1331. It is contended, in this regard, that the Amended Complaint is deficient for failure to allege that defendants "restrained, prevented, or chilled" plaintiff's exercise of his First Amendment rights. However, in order to dismiss Lawrence's Amended Complaint as jurisdictionally insubstantial under 28 U.S.C. § 1331, the Court must find that the claims asserted therein are "so attenuated and unsubstantial as to be absolutely devoid of merit, or clearly foreclosed by the decisions of the Supreme Court so as to leave no room for the inference that the questions sought to be raised can be the subject of the controversy." *Murrow v. Clifford*, 502 F.2d 1066, 1068 (3d Cir.1974). Far from being "devoid of merit," the Court finds that plaintiff's allegations regarding the severe harassment he received in retaliation for a letter he sent to a House subcommittee, state a cognizable First Amendment claim sufficient to establish jurisdiction under 28 U.S.C. § 1331. It is well settled that a suit for damages against federal officials based on deprivations of Constitutional guarantees, including First Amendment rights, is within the reach of federal question jurisdiction. *Butz v. Economou*, 438 U.S. 478, 481, 486 n. 9, 98 S.Ct. 2894, 2897–98, 2900 n. 9, 57 L.Ed.2d 895 (1978); *Paton v. La Prade*, 524 F.2d 862 (3d Cir.1975). *Cf. Hochman v. Board of Education of the City of Newark*, 534 F.2d 1094 (3d Cir. 1976) (dismissal of non-tenured teacher in retaliation for his exercise of First Amendment rights was proper invocation of federal jurisdiction under civil rights statute). *See also Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation*, 403 U.S. 388, 391, 91 S.Ct. 1999, 2002, 29 L.Ed.2d 619 (1971).

A more telling objection is raised as respects the timeliness of plaintiff's claims for money damages against the individual defendants. The plaintiff alleges that the defendants last harassed him in March, 1977 and that he was compelled to take a medical disability retirement from the Commission on August 26, 1977. Three years later, on August 26, 1980, plaintiff filed his original complaint in this action.

██ Because no federal statute of limitations exists to govern *Bivens*-type actions for violation of constitutional rights, the Court must apply the limitation period which would be applicable in the courts of the state in which the federal court is sitting, had an action seeking similar relief been brought under state law. *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894, 900 (3d Cir.1977). "The present action having been brought in federal court in Pennsylvania, our task is to determine which Pennsylvania statute of limitation would govern a similar action under state law in a Pennsylvania state court." *Id.* In this regard, defendants contend that the plaintiff's claim is most analogous to the state law tort action for intentional infliction of mental distress, a claim to which Pennsylvania courts would apply the two year limitations period provided in 42 PA.CONS.STAT.ANN. § 5524(2).[6] *See Stringer v. Commonwealth of Pa., Department of Community Affairs*, 446 F.Supp. 704, 706 (M.D.Pa. 1978). Plaintiff, on the other hand would characterize the action as being analogous to those torts involving the wrongful interference with another's contractual or em-

---

**6.** "The following actions and proceedings must be commenced within two years:

\*   \*   \*   \*   \*   \*

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another."
42 PA.CONS.STAT.ANN. § 5524(2) (1981 Purdon's Pamphlet).

ployment rights, to which the six year residuary statute of limitations, 42 PA. CONS.STAT.ANN. § 5527(6), would apply.[7] *Meyers, supra* at 902–03.

In choosing among alternative statutes of limitation, the Court must follow the framework for analysis set forth in *Meyers, supra.* First, the Court notes, that the plaintiff's action sounds in tort, rather than in contract. *Id.* at 901.

> The determination that the action sounds in tort is only the first step, however; we must identify the specific state tort most similar to the acts alleged in the complaint. We can best assess the similarity of the various state law torts to ... [the plaintiff's] federal claim from three perspectives: (1) the defendant's conduct, (2) the plaintiff's injury, and (3) the relief requested.

559 F.2d at 901.

■ From the standpoint of both the defendants' conduct and the plaintiff's injury, the present action bears a marked resemblance to the cause of action for the tortious infliction of mental distress.[8] As respects the defendants' conduct, it is alleged that defendants engaged in a campaign of harassment and torment designed to injure plaintiff's health and compel him to retire. Amended Complaint at ¶ 9. The alleged acts of defendant Bummara were "extreme and outrageous" and through this conduct, Bummara "intentionally inflicted severe emotional distress on Plaintiff." Amended Complaint at ¶¶ 11–12. The ICC and other individual defendants, it is averred, "wrongfully encouraged Defendant Bummara to harass Plaintiff and to injure his emotional and physical health and compel him to retire." Amended Complaint at ¶ 13.

As respects Plaintiff's injuries, it is alleged that as a result of defendants' outrageous conduct, "Plaintiff developed a life threatening heart condition, suffered emotional distress, humiliation and embarassment, and experienced a heart attack." Amended Complaint at ¶ 14. As a further result, "Plaintiff was compelled to take a medical disability retirement from the ICC because of the severe heart condition" he suffered. Amended Complaint at ¶ 16. Plaintiff, nonetheless, maintains that the most apt analogy is the group of tort claims

> ... such as fraudulent interference with contractual rights, wrongful interference with another's business, violation of seniority rights, and breach of an express trust. All these torts involve the wrongful interference with another's financial, commercial, or business rights. A victim of one of these torts suffers not so much from an emotional or mental trauma as he does from the actual denial of his right to lawfully pursue his business, employment, or personal affairs.

*Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894, 902 (3d Cir.1977). *See also Skehan v. Board of Trustees of Bloomsbury State College,* 590 F.2d 470 (3d Cir.1978) (claim of non-tenured college professor for employment termination in violation of his First Amendment rights resembled a state law claim for wrongful interference with contract); *Davis v. United States Steel Supply,* 581 F.2d 335 (3d Cir.1978) (racially discriminatory discharge from employment was analogous to unlawful breach of at-will employment contract).

To be sure, plaintiff experienced a loss of employment by reason of defendants' conduct, as alleged. A fair reading of the

---

7. "The following actions and proceedings must be commenced within six years:

   \*     \*     \*     \*     \*     \*

(6) Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a limitation period by section 5531 (relating to no limitation)."

42 PA.CONS.STAT.ANN. § 5527(6) (1981 Purdon's Pamphlet).

8. Indeed, plaintiff's allegations virtually track the definition of this tort, as set forth in the RESTATEMENT (SECOND) OF TORTS § 46(1):

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Id.*

Amended Complaint, however, reveals that plaintiff's alleged physical and emotional injuries are not just peripherally encompassed by the complaint, but rather constitute the gravamen of the injuries as they relate to the *Bivens* type claims against the individual defendants. *See Meyers, supra,* at 901.

As respects the relief sought by plaintiff, the only relief specifically sought from the individual defendants is "compensatory and punitive damages including damages for emotional distress, humiliation and embarrassment." Amended Complaint at ¶ 21. Thus, although the plaintiff also seeks "a judgment awarding Plaintiff reinstatement and transfer to another agency of the United States Government ...," the Court finds that the Plaintiff's claims for money damages against the individual defendants relate primarily if not exclusively to alleged bodily and emotional injuries rather than economic loss.[9] Accordingly, the Court concludes that the claims for money damages against the individual defendants most resemble a state law claim for the intentional infliction of mental distress, to which the two year limitations period of 42 PA.CONS.STAT.ANN. § 5524(2) applies. Since the original complaint in this matter was filed approximately three years after the acts complained of, these claims are time-barred.[10]

### Governmental Defendants

Defendants urge dismissal of this action as to the United States and the Interstate Commerce Commission on the grounds that the Federal Employees Compensation Act, 5 U.S.C. § 8101 *et seq.* [hereinafter FECA] provides the exclusive means by which plaintiff must seek redress against these governmental defendants. Pursuant to the FECA, the United States is obligated to pay compensation for the disability or death of an employee resulting from personal injury sustained in the performance of the employee's duty. 5 U.S.C. § 8102(a).[11] In this regard, defendants correctly urge that the FECA provides "the exclusive remedy for federal employees within its coverage and such employees have no election of remedies." *Joyce v. United States,* 474 F.2d 215, 219 (3d Cir. 1973). The Act further provides that all questions "arising under" FECA shall be decided by the Secretary of Labor and his decision is "final and conclusive" and "not subject to review by another official of the United States or by a Court of mandamus or otherwise." 5 U.S.C. § 8128.

Notwithstanding the "exclusive" nature of the FECA remedies for federal employees, as noted above, the Court finds that dismissal of plaintiff's claims on this basis is not warranted. First, the exclusivity of FECA remedies only applies to the redress of injuries within the coverage of the Act, that is, job-related physical injury. *See* 5 U.S.C. § 8101(5).[12] The courts, in this regard, have held that FECA does not

---

**9.** It is not surprising that acts which would constitute the intentional infliction of mental distress also result in some interference with commercial interests. *See e.g., State Rubbish Collectors Association v. Siliznoff,* 38 Cal.2d 330, 240 P.2d 282 (1952).

**10.** Although the issue is not reached, the Court notes that it would be hesitant to infer a *Bivens* remedy in this case even if it were timely filed, due to the unique relationship between the Federal Government and its civil service employees. *Bush v. Lucas,* 647 F.2d 573, 576 (5th Cir.1981), *cited with approval in Purtill v. Patricia Roberts Harris, et al.,* 658 F.2d 134, 137 (3d Cir.1981).

**11.** (a) The United States shall pay compensation as specified by this subchapter for the disability or death of an employee resulting from person-

al injury sustained while in the performance of his duty, unless the unjury or death is—
(1) caused by willful misconduct of the employee;
(2) caused by the employee's intention to bring about the injury or death of himself or of another; or
(3) proximately caused by the intoxication of the injured employee.
5 U.S.C. § 8102(a).

**12.** The Act defines an "injury" as follows:
(5) "injury" includes, in addition to injury by accident, a disease proximately caused by the employment, and damages to or destruction of medical braces, artificial limbs, and other prosthetic devices which shall be replaced or repaired, and such time lost while such device or appliance is being replaced or repaired;

provide coverage for mental suffering, humiliation, embarrassment or loss of employment such as have been alleged by the plaintiff. *Sullivan v. United States,* 428 F.Supp. 79 (E.D.Wis.1977); *Mason v. District of Columbia,* 395 A.2d 399 (D.C.App. 1978). Since such injuries are not within FECA coverage, the "exclusivity" of FECA remedies will not bar the present action.

Second, in the Court's view the policy underlying the FECA exclusivity provision is inapplicable to cases such as this one where only equitable relief is sought against the governmental defendants. As related in one of plaintiff's briefs, "Plaintiff emphasizes that he does not seek compensatory damages from the United States; instead he seeks equitable relief for the government's having allowed individual defendants' behavior to occur. From the government he seeks reinstatement, transfer and back pay."[13] The structure and design of FECA establishes nothing more than a federal worker's compensation program for job-related injuries, similar to state worker's compensation programs. *Gill v. United States,* 641 F.2d 195, 197 (5th Cir.1981). The Act provides injured federal employees "with more immediate and less expensive relief than a common law tort action." *Avasthi v. United States,* 608 F.2d 1059, 1061 (5th Cir.1979), *citing United States v. Demko,* 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Not surprisingly, many of the cases construing the exclusive nature of FECA remedies have done so in the context of attempts by employees to bring actions for damages under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq. See e.g., Gill v. United States,* 641 F.2d 195 (5th Cir. 1981); *Reep v. United States,* 557 F.2d 204 (9th Cir.1977); *Joyce v. United States,* 474 F.2d 215 (3d Cir.1973). Indeed, the FECA exclusivity provision, 5 U.S.C. § 8116(c), was enacted some thirty years after the original Act was passed in order to prevent federal employees from bypassing FECA remedies in search of more substantial recoveries under other statutes such as the Federal Tort Claims Act. *Galimi v. Jetco, Inc.,* 514 F.2d 949, 952–53 (2nd Cir.1975). Thus, the legislators were concerned with limiting the costs to government of litigating suits "and paying substantial damages" to injured employees. *Id.* at 953. Accordingly, since plaintiff's present claim does not involve compensatory damages,[14] and is not premised upon injuries otherwise covered by FECA remedies, the FECA exclusivity provision does not mandate dismissal of plaintiff's claims against the governmental defendants.[15]

An additional contention raised by defendants is that the doctrine of sovereign immunity bars plaintiff's suit against the United States and the Interstate Commerce Commission. Further, a closely related argument is made that the Administrative Procedure Act, 5 U.S.C. §§ 701 *et. seq.* does not confer subject matter jurisdiction on Federal Courts to review administrative action where jurisdiction does not otherwise exist.

By its terms, the Administrative Procedure Act authorizes judicial review of

---

except that eyeglasses and hearing aids would not be replaced, repaired, or otherwise compensated for, unless the damages or destruction is incident to a personal injury requiring medical services....

5 U.S.C. § 8101(5). Thus, FECA does not even purport to provide a forum for a constitutionally impermissible termination of employment.

**13.** Plaintiff's Supplemental Memorandum Of Law In Opposition To Defendants' Motion To Dismiss, Docket Entry No. 28 at 10–11.

**14.** Plaintiff does request an award of backpay as one aspect of the relief sought. Whether or not that aspect of relief would ultimately prove to be appropriate, "compensatory damages" as used in the text is intended to refer to unliquidated sums in the nature of damages, as opposed to "a liquidated sum wrongfully withheld by a federal official or agency." *See United States v. Commonwealth of Pennsylvania,* 394 F.Supp. 261, 265 (M.D.Pa.1975).

**15.** Since a broad range of equitable relief is sought against the governmental defendants, which relief focuses on plaintiff's loss of employment, the statute of limitations considerations relative to the *Bivens* claims against individual defendants do not apply. Consequently, this aspect of the Amended Complaint is not time-barred.

agency actions, even though the legal proceeding challenging such action is brought against the United States, provided that the relief sought is "other than monetary damages." 5 U.S.C. § 702. Moreover, sovereign immunity plays no role when, as here, federal officials are alleged to have acted outside the scope of their authority. *United States v. Commonwealth of Pennsylvania*, 394 F.Supp. 261 (M.D.Pa.1975). Thus, the Court does not find the doctrine of sovereign immunity to bar plaintiff's action to review allegedly unconstitutional agency action, which action seeks relief "other than monetary damages."[16] *See also, Jaffee v. United States*, 592 F.2d 712 (3d Cir.) *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979).

■ Although the Administrative Procedure Act does not afford an independent grant of subject matter jurisdiction permitting federal judicial review of agency action, *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), this does not preclude the possibility that when taken together, the Administrative Procedure Act and 28 U.S.C. § 1331 may provide subject-matter jurisdiction to review unconstitutional agency action. *See, Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1356 (9th Cir.1978); *Doe v. United States Civil Service Commission*, 483 F.Supp. 539, 558 (S.D.N.Y.1980). As earlier related, plaintiff has alleged violations by defendants of his First Amendment rights, which allegations are jurisdictionally substantial under 28 U.S.C. § 1331. Accordingly, this case may proceed inasmuch as it seeks judicial review of alleged unconstitutional agency action and relief other than money damages.

### Mandamus Act

A separate basis of jurisdiction asserted that is relevant to all defendants is the Mandamus Act, 28 U.S.C. § 1361. In this regard, defendants urge that the Mandamus Act is inapplicable here because plaintiff asserts no ministerial, nondiscretionary duty, owed to him by defendants. Also, defendants contend that Mandamus jurisdiction does not lie for failure of plaintiff to exhaust his administrative remedies. For the following reasons, however, the Court finds that the Mandamus Act is properly invoked in this case, and the action may proceed accordingly.

Title 28 U.S.C. § 1361 provides that "district courts shall have jurisdiction of any action in the nature of a mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

■ At the outset, it is noted that the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations. *Allied Chemical Corporation v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). Moreover, "the purpose of the Mandamus Act is to permit district courts generally to issue appropriate corrective orders where federal officials are not acting within the zone of their permissible discretion; the writ will issue only where the federal officers are abusing their discretion or acting contrary to law." *Jeno's v. Commissioner of Patents and Trademarks*, 498 F.Supp. 472, 476 (D.Minn.1980).

■ Generally speaking, a writ of mandamus will issue only when there exists (1) a clear right in the plaintiff to the relief sought, (2) a clear duty on the part of the defendant to do the act in question, and (3) no other adequate remedy is available. *Jeno's v. Commissioner of Patents and Trademarks, supra*, at 476; *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir.) *cert. denied*, 449 U.S. 832, 101 S.Ct. 100, 66 L.Ed.2d 37 (1980). While there is some doubt whether plaintiff would be entitled to all of the relief he seeks from the governmental defendants (which includes not only reinstatement but backpay plus transfer to another agency), plaintiff's allegations are

---

**16.** *See* note 14 *supra*. The Court does not now decide whether an award of backpay would constitute monetary damages in this case that

would be impermissible under principles of sovereign immunity.

sufficient to invoke jurisdiction under the Mandamus Act. First, it is noted that traditionally, "the procedural avenue to reinstatement for an ex-employee of the federal government claiming to be a victim of improper discharge has been a petition for mandamus or writ of mandamus ..." *Beale v. Blount*, 461 F.2d 1133, 1137 (5th Cir.1972).[17] Further, where, as here alleged, there has been action taken by government officials contrary to law and so plainly prohibited as to be free from doubt, it may be remedied by the issuance of a writ of mandamus. *Naporano Metal And Iron Company v. Secretary of Labor Of the United States*, 529 F.2d 537, 542 (3d Cir.1976). In such circumstances, mandamus will lie even though the duty breached is not purely ministerial. *Id.* Lastly, mandamus is not rendered inapplicable by reason of plaintiff's failure to pursue an administrative remedy under FECA, due to the inapplicability of that statute to the present claim.[18] Accordingly, this action may proceed to review the agency's action by mandamus proceeding.

### Conclusion

Plaintiff's claims for money damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against defendants Anthony Bummara, Joel Burns, William Love, and Lewis Teeple will be dismissed with prejudice as being untimely filed. The action may proceed, however, for non-monetary relief against all defendants under the Administrative Procedure Act, 5 U.S.C. §§ 702, 703 and the Mandamus Act, 28 U.S.C. § 1361.[19]

### ON MOTION FOR SUMMARY JUDGMENT

The Government has moved for summary judgment in favor of the individual defendants in this action—Bummara, Burns and Teeple. In a Memorandum and Order of this Court entered June 8, 1982, this Court dismissed all claims for damages against the individual defendants as untimely under applicable statutes of limitation. However, the action was permitted to proceed against said defendants under the Mandamus Act, 28 U.S.C. § 1361, seeking reinstatement to plaintiff's former position with the Interstate Commerce Commission, as well as an award of back pay.

The individual defendants in question, however, have retired from their respective positions with the Interstate Commerce Commission. The Government argues, therefore, that the retired defendants no longer have any authority or power to grant plaintiff *any* of the equitable relief he seeks in the Mandamus proceeding. The point is well taken. By its very nature, Mandamus will lie only where a federal official owes the plaintiff a ministerial duty, that is, a duty that is positively commanded. *Paige v. Pennsylvania Board of Parole*, 311 F.Supp. 940 (E.D.Pa.1970). Since the individual defendants are no longer federal officials, it necessarily follows that they owe no clear, ministerial duty to plaintiff.

Plaintiff nonetheless argues that defendants remain individually liable for an award of back pay. This position is untenable. As earlier related, plaintiff's claims for damages against the individual defendants were dismissed as untimely. This ruling can not be so easily avoided by asserting a claim for compensation against the individual defendants by a Mandamus action. In this regard, *Brook v. Thornburgh*, 497 F.Supp. 560 (E.D.Pa.1980) offers no support for plaintiff. In *Brook*, it was held in a § 1983 civil rights action that state officials could be held personally lia-

---

**17.** Implicit in the Court's reasoning is the view that a compelled retirement due to harassment in derogation of plaintiff's constitutional rights is tantamount to an improper discharge.

**18.** Should further factual development of this case reveal that plaintiff as a matter of fact did not exhaust other available civil service administrative remedies, and such failure was without good cause, this action may yet be capable of summary disposition.

**19.** The underlying jurisdictional basis, as related above, is 28 U.S.C. § 1331.

ble for an award of back pay to one wrongfully discharged. The decision does not go so far as to authorize similar recovery in a Mandamus action against individuals no longer federal officials. Moreover, to permit such recovery as sought by plaintiff against the individual, retired defendants would result in plaintiff's salary as a federal employee being paid by one other than the United States, which result would likely contravene 18 U.S.C. § 209.

For the foregoing reasons, therefore, the Court concludes that defendants Bummara, Burns and Teeple are entitled to summary judgment as a matter of law.[1]

---

**1.** Although not raised by counsel in the context of these motions, we note that FED.R.C.P. 25(d)(1) provides:

> When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

To the extent this provision is applicable, the Court will entertain any appropriate requests for an order of substitution or addition of a party.