**Richard STACEY, Jr., Plaintiff,**

v.

**BANGOR PUNTA CORP., et al., Defendants,**

v.

**Robert WAITT, Third-Party Defendant.**

**Civ. No. 83–0276–P.**

United States District Court,
D. Maine.

Oct. 24, 1985.

Michael Latti and William J. Griset, Jr., Latti Associates, Boston, Mass., Thomas F. Shortill and John M. Shortill, Sandford, Me., for plaintiff.

M. Roberts Hunt and Glenn H. Robinson, Portland, Me., for defendants.

Thomas R. McNaboe and John Bass, II, Portland, Me., for third-party defendant Robert Waitt.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO ADD TWO EXPERT WITNESSES

GENE CARTER, District Judge.

### I. *Background*

This matter is presently before the Court on request for expedited hearing on Plaintiff's Motion for Leave to Add Two Expert Witnesses, filed on October 18, 1985 at 3:02 p.m. By the motion Plaintiff seeks to add additional expert witnesses, Messrs. L.S. Martin and Stanton O. Berg, to testify on the liability issues at trial. The reasons put forth for this late identification of expert witnesses is

that Plaintiff's counsel has just recently received three expert reports (Fossett, Baker and Sefried) from the Defendant, wherein these experts set forth an entirely new opinion/defense for the very first time. The above two listed expert witnesses are absolutely essential to the Plaintiff in order to deal with this new theory presented by the Defendant....

Plaintiff's Motion for Leave to Add Two Expert Witnesses at 1. Defendants filed an objection to the Plaintiff's motion on October 21, 1985, and consented to the expedited hearing thereon requested by Plaintiff's counsel. On October 21, 1985 at 1:30 p.m. the Court held a hearing on the record in chambers, with counsel for all of the parties present.

Plaintiff's counsel concedes at the outset that the Defendants filed over a year ago a Rule 26(b)(4) disclosure of the anticipated expert testimony of Defendants' expert witnesses Harry Sefried and Richard Baker. The Court has reviewed the text of that disclosure. Plaintiff asserts, however, that when the Defendants served copies of the reports of the expert witnesses Sefried and Baker upon Plaintiff's counsel, on October 8, 1985, pursuant to a prior order of the Court, Plaintiff discovered for the first time that Defendants' experts would concede that Defendants' revolver did have a condition known as the "hung up position" of the firing mechanism (alleged by Plaintiff to be one of the two design defects in the revolver at issue herein), but would testify and that other double action revolvers made by other manufacturers have the same characteristic. This expert testimony is what is alluded to in the pending motion by Plaintiff as the "new theory presented by the Defendant." Plaintiff asserts that it needs to be able to produce the testimony of Messrs. Martin and Berg in order to counter the thrust of this testimony and

effectively meet the Defendants' "new theory."

At the conference Defendants' counsel stated that several days before the filing of the pending motion he received a telephone call from Plaintiff's counsel in which he was asked to agree to the substitution at trial of Messrs. Martin and Berg in place of Plaintiff's identified expert witness, William Nittler. Defendants' counsel stated that he refused that request. At the conference, Plaintiff's counsel admitted that such a telephone conversation had occurred. Plaintiff's counsel asserted, however, that the testimony of Messrs. Martin and Berg was essential to Plaintiff's case in order to counter Defendants' "new theory" of defense and to now establish that the entire revolver industry was manufacturing weapons that were inadequate in light of the present state of the art in terms of safety precautions against inadvertent discharge. On inquiry by the Court he indicated that Martin and Berg would produce much testimony repetitive of and cumulative to that already available from Nittler, with perhaps some greater emphasis, as well as testimony on the state of the art and the significance of the fact that pistols of other manufacturers also are subject to the "hung up" position in their firing mechanisms.

Defendants assert, however, that the prior discovery in this case indicated as long ago as January 11, 1985 that the firing mechanism of other manufacturers than the Defendants herein would "hang up." Further, Defendants suggest that the deposition of Mr. Baker herein, which was taken by Plaintiff's counsel on February 11, 1985, contains testimony in which Baker admitted to having tested other manufacturers' revolvers to determine whether they would "hang up" and that he had found that two Ruger models and two High Standard models would do so. Thus, Defendants assert that Plaintiff's claim of surprise at the recent development disclosed by the reports delivered on October 8, 1985 is without foundation.

A brief resume of the discovery history in respect to expert testimony in this case is instructive in setting the predicate for the resolution of the present controversy. This matter was commenced by the filing of a complaint in this Court on August 24, 1983. The matter proceeded until the scheduling conference before the Magistrate on December 16, 1983. The report of the conference, filed on December 19, 1983, required that the Plaintiff identify expert witnesses by March 15, 1984 and that the Defendants do likewise by July 2, 1984. Report of Preliminary Pretrial and Scheduling Conference at 2.

Thereafter, Plaintiff sought an extension of the period for identification of its expert witnesses which was ultimately granted by the Magistrate; the period for disclosure of Plaintiff's expert witnesses being enlarged to March 7, 1984. Order of March 19, 1984. Thereafter, the Magistrate entered, on June 3, 1985, an Order and Recommended Decision granting the Plaintiff's Motion for Leave to File a Supplemental Designation of Expert Witnesses and Enlarging the Discovery Deadline for thirty days "for the sole purpose of permitting the Defendants to take the deposition of this expert and to name any experts in response." Order and Recommended Decision of June 3, 1985 at 1.

Thereafter, on June 21, 1985, the Clerk notified counsel that this matter was scheduled for trial on the jury trial list to commence on September 30, 1985. Defendants' counsel requested a continuance of the trial, which was granted by the Court's Procedural Order filed on July 31, 1985, and which order specifically stated that "this matter be continued for trial to the Court's civil trial list to commence on November 12, 1985, this case to be the first case on that list." Procedural Order at 1. At that conference all counsel joined in a request for a specific assignment of the case for trial. There was no objection made at the conference to the March 12, 1985 trial date when it was selected by the Court after conferring with counsel. No objection thereto has been registered sub-

sequent to the Order of July 31, 1985 establishing that date.

In the meantime, Defendants had filed on June 13, 1985 an objection to the Magistrate's Recommended Decision referred to hereinabove. The Court next entered its Order on Defendants' Motion to Compel Production of Nittler Documents on September 17, 1985. The Nittler documents were documents generated by Plaintiff's expert witness, William Nittler, which the Plaintiff had refused to produce in voluntary discovery. The Court ordered their production in its order of September 17, 1985.

The matter was next before the Court for a conference of the Court and counsel on September 18, 1985 for purposes of preparing the above-entitled matter for Summary Jury Trial. Resolved in the course of the conference was the Defendants' Motion for Leave to Add an Expert Witness, filed on September 10, 1985. This motion related to the witness Dr. Philip Haber and after thorough discussion with counsel at the conference, the Court granted the Defendants' motion and established a time schedule, which the Court explicitly stated was framed so as to avoid the need for any continuance of the scheduled trial date of November 12, 1985. *See* Report of Conference and Procedural Order of September 19, 1985 at 4–5. The same order set the case, "by agreement of counsel," for final pretrial and settlement conference on September 24, 1985 at 4:00 p.m. *Id.* at 7. The order reiterated that "[t]his matter is set for commencement of trial by the drawing of a jury on November 12, 1985, at 9:00 a.m." *Id.* at 8.

A final pretrial conference of the Court and counsel was held on September 24, 1985, at which time an exhaustive discussion was had concerning the status of all outstanding discovery matters and all pending motions. No indication was given to the Court or other counsel at that time that Plaintiff had any intention of adding additional expert witnesses to those listed to testify at trial. The report of the final pretrial conference again articulated that

"[t]his matter is set for commencement of trial with the drawing of a jury on November 12, 1985, at 9:00 a.m." Report of Final Pretrial Conference and Order of September 25, 1985 at 7. The report of the conference and order set forth pretrial preparations and set a completion date for such activities of November 5, 1985. *Id.* at 11.

On October 17, 1985 this Court filed its Order Denying Defendants' Objection to Magistrate's Order Granting Plaintiff's Motion for Leave to File a Supplemental Designation of Expert Witness, etc. That order affirmed the Magistrate's order allowing the supplemental designation of expert witnesses.

## II. *Discussion*

■ The Court views the Plaintiff's motion as arising from a significant breach of the Plaintiff's obligation to diligently prepare for trial and to observe the discovery requirements specified in the discovery rules and those imposed by the Court in the particular proceeding. The issue is to be resolved by the exercise of the Court's discretion. *DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193, at 1201 (3d Cir.1978). The Court is fully aware that the exclusion of testimony in the circumstances of the present case is usually viewed as the extreme sanction for dilatory conduct or inadvertent delay in the prosecution of trial preparations and the development of testimony. *Dudley v. South Jersey Metal, Inc.,* 555 F.2d 96, at 99 (3d Cir.1977). Such exclusion should be avoided whenever it is possible to alleviate by other means any prejudice occasioned by late disclosure of the testimony. *Meyers v. Pennypack Woods Home Ownership Assn.,* 559 F.2d 894 at 905 (3d Cir.1977); Criteria of decision that may serve at least as general guidelines to resolution of the pending motion are set out in *Meyers,* 559 F.2d at 904–05; *see also DeMarines,* 580 F.2d 1193, and *Dychalo v. Copperloy Corp.,* 78 F.R.D. 146 (E.D.Pa.1978), to which the Court has taken reference, as it has on another occasion. *See Murphy v. Frank Adam, Inc.,* 107 F.R.D. 744 (D.Me. 1985). The First Circuit Court of Appeals

has just recently stated, concerning the criteria set out in *Meyers*, "[w]e agree with the Third Circuit that the two most important factors to be considered are the prejudice and surprise suffered by the opposing party, and that party's ability to cure the prejudice." *Johnson v. Webster*, 775 F.2d 1 at 7 and n. 7 (1st Cir.1985). The Court also noted that Rule 26 is not to be read "mechanically, but rather in light of its dual purposes, 'narrowing issues and elimination of surprise.'" *Id.* at 7.

### A.

The Court finds that the Plaintiff's characterization of the defense experts Baker and Sefried as putting forth, by their reports delivered on October 8, a "new theory" of defense is overblown and inaccurate. The Court has an uniquely extensive knowledge of the factual aspects of this case because of its continuous involvement in the motion practice and trial preparation process that has taken place herein. Plaintiff asserted early on in this litigation that the revolver with which the Plaintiff was wounded was defectively designed because of two facts: (1) its firing mechanism could be manipulated into a "hung up" position in which it could be inadvertently discharged in spite of the three built-in safety mechanisms; and (2) it was not provided with any external, manual safety. Defendants have consistently denied that either the potentiality of the "hung up" position or the absence of a manual safety rendered the revolver unreasonably dangerous, breached any express or implied warranty, or constituted negligence in the design of the revolver. The Defendant has never taken a definitive position as a result of expert opinion that the "hung up" position of the firing mechanism could not physically occur. Defendants have not precluded such a position from being taken, they simply have not taken that position and have put the Plaintiff to his burden of proof to prove that such a circumstance could, and did here, occur. The Defendants have maintained that even if a "hang up" could and did occur, such proof would not establish liability on any of the three theories put forth by Plaintiff.

Thus, the proof of liability in the case clearly depends on (1) Plaintiff's ability to prove that the weapon got into the "hung up" position on the occasion of Plaintiff's wounding (which implicitly includes proof as a matter of mechanics that the Defendants' weapon *could* get into such a condition); (2) that once in such condition the revolver was unreasonably dangerous; (3) that its existence in such condition breached an express or implied warranty made by the Defendants; or (4) that its susceptability to get into that condition establishes negligence in design by the Defendants; *and* (5) that the existence of the condition caused the wounding of the Plaintiff. As an alternative theory the Plaintiff had the burden of proving that the absence of a manual safety, either with or without the "hang up," met any or all of those theories of liability *and* that such a design defect, if found to be such, caused the Plaintiff's injury.

The Court is fully satisfied that Plaintiff's counsel have been aware from the beginning of this litigation that in order to carry their burden of proof they would have to explore thoroughly the mechanics of the operation of the revolver in question and demonstrate (1) that it was physically possible for the "hang up" to occur; (2) that it did occur; (3) that such condition, by itself or in conjunction with the absence of a manual safety, was a defect in the revolver; *and* (4) that the defect caused the Plaintiff to be shot. A proper, indeed obvious, subject of inquiry in that regard would be whether other revolvers of the same or similar type also could be manipulated into the "hung up" position. Plaintiff's counsel was not required to make such inquiry. However, the burden to do so, if necessary for purposes of carrying the Plaintiff's burden of proof, was on the Plaintiff. He was not entitled to have the proof pertinent to such inquiry laid out on a silver platter by the Defendants in expert discovery. His was the burden to explore the subject through inquiry and dig out the proof, pos-

sibly by the use of the discovery tools provided by the Civil Rules.

Plaintiff's counsel did in fact discover that revolvers of other manufacturers were subject to the "hang up" when he deposed Defendants' expert, Mr. Baker. Further, in a memoranda submitted to this Court on January 11, 1985, he indicated familiarity with at least portions of a deposition of a Donald Fogg, taken in another case against Defendant Smith & Wesson. The transcript of the deposition reflects that Mr. Fogg had testified, as Defendants point out, to his knowledge that two Ruger and two Hi-Standard revolvers could be manipulated into the "hung up" position. Defendants' Memorandum in Support of Objection to Plaintiff's Motion to Add Two Expert Witnesses, at 3 and App. "B."

█ Thus, the Plaintiff's claim of a surprise disclosure in respect to the existence of the "hung up position" in other revolvers in not well founded. First, the burden to discover such fact, to the extent that it should be discovered, is within the bounds of reasonable investigation of the existence of a specific defect alleged by the Plaintiff. Second, the Court finds that the Plaintiff's counsel had knowledge of the fact at least by February 11, 1985. That knowledge did not come to Plaintiff's counsel for the first time on October 8, 1985, when the Defendants provided updated expert reports.

Therefore, Defendants' disclosure of the fact that other revolvers are susceptible to the "hang up" does not, by any stretch of the imagination, present any "new theory of defense." That fact is simply a constituent part of the factual matrix of the defensive posture maintained throughout the course of this litigation. The Court finds that the disclosure achieved by the submission of the reports of October 8 did not occasion any genuine surprise to Plaintiff's counsel as to the existence of that fact. Finally, to the extent that Plaintiff's knowledge of the fact is late in arriving, that is due entirely to the failure of Plaintiff's counsel to move diligently to discover and investigate claims within the scope of his own burden of proof during the time periods permitted to him by the rules and the prior orders of the Court.[1]

### B.

The Court must conclude, in view of the request by Plaintiff's counsel, that Defendants' counsel voluntarily agree to substitution of the two witnesses he now seeks to add, that the pending motion is simply an effort to achieve, by surprise and on the eve of trial, an improper advantage at trial by at least buttressing, and perhaps expanding, the probative force of the expert testimony of the Plaintiff's case. The Court finds no legitimate need for these additional witnesses in order for Plaintiff to prove his case as he has previously displayed that case in the discovery process. No unfair prejudice will result to Plaintiff from the exclusion of these witnesses and, if any there be, it is derived not at all from any improper conduct of the Defendants, but wholly from Plaintiff's failure to properly assemble its expert testimony. Plaintiff had ample opportunity to do so, especially considering the extension granted by the Magistrate for that purpose and approved by this Court.

### C.

This case has now been pending for two years and two months. It was scheduled on June 21, 1985 to go to trial on a jury trial list to commence on September 30, 1985. It was continued on July 31, 1985

---

1. Plaintiff bases his request for exclusion in part on the fact that Defendants have not responded to Plaintiff's outstanding expert interrogatories. The file herein shows the interrogatories were first served on Defendants on September 19, 1983. Clearly, Defendants' have provided since that time a significant amount of information about the testimony of its witnesses. Plaintiff has never filed a motion to compel answers to such interrogatories or otherwise sought on the record formal answers. If Plaintiff is aggrieved by the lack of formal answers it is his own fault. He clearly had adequate opportunity since mid-October 1983 to note the lack of such answers and to seek the Court's aid in obtaining them. *See Simonsen v. Barlo Plastics Co., Inc.,* 551 F.2d 469, at 471 (1st Cir.1977).

because defense counsel was then committed, as one of lead defense counsel in the asbestos litigation pending in this Court, to go to trial during the same time period. At the time of continuance it was specifically set for trial to commence on November 12, 1985 at 9:00 a.m. at the request and with the consent of all parties. The Court has since that date specially reserved to this case the eight to ten days of trial time on its docket which counsel estimate that the trial will require. Other cases have been scheduled around the period so committed to this case.

Counsel have since the July 31 conference committed prodigious efforts to get this case ready for trial as scheduled, as has the Court. The Court has held two pretrial conferences and has conferred twice with counsel on particular issues including the present motion. It has filed five memoranda of decision and orders since October 17, 1985 disposing of objections and pending motions, all in an effort to resolve all pretrial issues prior to November 12. All counsel have organized their schedules to accommodate the lengthy trial and the demands of advance preparation for trial.

The Court's trial docket has been framed since October 1, 1985 on the basis that the period from November 12 to November 26, 1985 is reserved for the trial of this case. A criminal trial docket has been set for the month of December on that basis and the next civil jury trial list is scheduled to commence on January 2, 1986. Counsel in cases on that list have been advised that those cases will not be called for trial before January 2.

To the extent that a continuance of the scheduled trial in this case should become necessary, it would cause a very adverse effect upon the Court's trial calendar through January 1986. At the very least, it would require a complete restructuring of the docket over the next two and a half months and require the Court, in order to use the trial time made available in November for this case, to thrust upon counsel in

other cases the burden to speedily prepare their cases for trial after having been assured by the Court that they are not at risk of trial until January 2, 1986. The Court would be put to an arduous effort to ready substitute cases for trial by holding final pretrial conferences and deciding pretrial motions on short notice. At worst, and the Court thinks it likely, the trial time could not be filled with other cases, in fairness to counsel, and ten days of trial time could well be wasted. Finally, if continued, this lengthy case would have to be inserted into the existing January 1986 trial schedule, thereby disrupting it and utilizing time now allocated to trial of other cases for which counsel therein are now preparing.

Thus a continuance of this case would cause a severe disruption of this Court's established docket for the next several months, occasion significant amounts of unanticipated time and effort by the Court, numerous counsel and others to accommodate to the changed situation, and notably impair the judicial efficiency of this Court. Finally, it would delay by at least several months trial of this case in which many persons have made special efforts to meet the established trial date originally agreed upon, the case being now in a posture to be ready for trial on November 12 but for Plaintiff's latest request to add expert witnesses. The benefit of a significant part of those efforts would be lost by a continuance at this point in time.

### D.

The content of the proposed testimony of the newly proposed expert witnesses, as their testimony is described by Plaintiff's counsel, would substantially prejudice the Defendants[2] if admitted at trial without adequate opportunity for discovery in respect to its contents. There remained, as of the hearing on the motion, a total of thirteen regular work days before November 12 in which such discovery could be conducted. Plaintiff's counsel indicated that he would require three days to produce first written reports from the experts setting out their proposed testimony and

---

**2.** Third-Party Defendant Waitt has taken no po-    sition on the motion.

the bases of it. This would leave Defendants' counsel with a total of ten work days to assimilate the information in the reports, confer with clients and other expert witnesses, and to prepare for and conduct depositions of the new witnesses. In order to meet the November 12 trial date, this effort would have to be done contemporaneously with the other tasks necessary to prepare a high risk, technically complex, and lengthy civil case for trial. Counsel object to having that burden cast upon them and suggest that it is impossible in any event. The Court finds that it is manifestly unfair to impose the burden and is convinced that the task is probably impossible of accomplishment in any event, in fairness to defense counsel.

The prejudice of the proposed testimony would, in the Court's view, flow inexorably from the repetition of Nittler's analysis by the new witnesses, thus adding probative force to that analysis.[3] To the extent that the new witnesses will deal with new topics of analysis or advocate different modalities of analysis than would Nittler, defense counsel legitimately claim prejudice by surprise on the eve of trial. Clearly, a reasonable chance for effective expert discovery is required if such testimony is to be admitted against the Defendants at trial of this case. The Court is fully satisfied and does find that the Court-sanctioned addition of the new expert witnesses would certainly require that the Defendants be provided with an adequate opportunity to conduct meaningful and effective discovery in respect to their testimony. The Court further finds that the probability is that such an opportunity cannot be provided to Defendants if they are required to meet the November 12 trial date. The Court also finds that to require them to do so would likely prejudice their ability to adequately prepare in other respects for trial within the time available. To do so would, in any event, occasion prejudice to Defendants simply by burdening defense counsel with

so difficult a task. *See Scott & Fetzer Co. v. Dile,* 643 F.2d 670, at 673 (9th Cir.1981).

Accordingly, it is clear to the Court that allowance of the new witnesses would require, as the only feasible method of alleviating the prejudice to Defendants, a continuance of the November 12 trial date. Such a continuance would be for an indefinite period of time, taking into account the temporal demands of an appropriate discovery opportunity and the Court's heavy trial schedule.

### E.

Taking all aspects of the situation into account, the Court concludes that there is no reason in the first instance to allow the addition of the newly proposed witnesses. Finally, in view of the fact that to do so would require a continuance of trial to the extreme prejudice of the parties, all counsel, and of the Court, and would represent a significant setback to judicial economy in this District, there is every reason why Plaintiff's request must be DENIED.

So ORDERED.

---

**3.** The other side of the coin is that such cumulative testimony is unnecessary to Plaintiff's case in any event in order for Plaintiff to get the Nittler analysis into evidence. The Court has not been shown and cannot perceive of any basis on which it could fairly and intelligently limit the testimony of the newly proposed witnesses in an effort to alleviate this prejudicial aspect of their testimony.