ST. JOSEPH HOSPITAL, a duly licensed hospital and nonprofit corporation doing business in Bangor, County of Penobscot, and State of Maine, Plaintiff,

v.

INA UNDERWRITERS INSURANCE COMPANY, an insurance company doing business in the State of Maine, and Insurance Company of North America, an insurance company doing business in the State of Maine, Defendants.

Civ. No. 86–0133–B.

United States District Court, D. Maine.

Sept. 29, 1987.

See also, D.C., 117 F.Supp. 24.

Harold J. Friedman, Gregory W. Powell, Friedman & Babcock, Portland, Me., for plaintiff.

Frederick J. Badger, Jr., Richardson Troubh & Badger, Bangor, Me., for defendants.

MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE PETER De-TROY AS AN EXPERT WITNESS AND FOR LEAVE TO DESIGNATE ADDITIONAL EXPERTS

GENE CARTER, District Judge.

This matter comes before the Court on Plaintiff's motion to strike Peter DeTroy as an expert witness and Plaintiff's motion for leave to designate additional experts. For the following reasons, both motions are denied.

I. *Background*

Plaintiff St. Joseph Hospital alleges that Defendants INA Underwriters Insurance Company (INA) and Insurance Company of North America (ICNA) issued an insurance policy to Plaintiff which covered the hospital for medical malpractice liability claims. The policy had a limit of $500,000. In June 1984, Scott Malloch asserted a medical mal-

practice claim against St. Joseph for $850,-000, arising from injuries he suffered as a result of an operation performed at the hospital by Drs. Jordan Shubert, James Lawsing, and Douglas Timms. The hospital forwarded a copy of the notice of claim and the summons and complaint to Defendants at their Portland office. On December 7, 1984, the Clerk of the Penobscot County Superior Court entered a default against St. Joseph Hospital in the *Malloch* case for failing to plead or otherwise respond to Scott Malloch's complaint. In subsequent proceedings, the Maine Superior Court refused St. Joseph's motion to set aside the default.

Plaintiff's complaint asserts four counts. Counts II, III, and IV allege, *inter alia,* that Defendants breached their duty of good faith and fair dealing in the handling of claims, breached their duty of reasonable care in handling of claims, and intentionally, deliberately, and maliciously caused harm to Plaintiff by (1) failing to retain counsel for Plaintiff in a timely manner; (2) allowing an entry of default to be entered against Plaintiff; (3) refusing to acknowledge responsibility for excess liability in Scott Malloch's action against the hospital; (4) refusing to offer Scott Malloch any reasonable settlement sum; (5) initiating cross-claims against Drs. Shubert, Lawsing, and Timms without the consent of Plaintiff; and (6) maintaining the cross-claims despite Plaintiff's notification to them that continued pursuit of the claims was seriously damaging the hospital's ability to work with its staff.

## II. *Plaintiff's Motion to Strike Peter DeTroy as an Expert Witness*

■ Defendants retained Mr. DeTroy, a Portland attorney, to testify as an expert witness with respect to the actions of Defendants and their counsel in this matter. Plaintiff argues that because "this is not a legal malpractice action against a law firm or lawyer," Mr. DeTroy's testimony is irrelevant and not within the scope of Federal Rule of Evidence 702.

Plaintiff cannot be heard to argue that testimony concerning the actions by Defendants' counsel is irrelevant. Plaintiff

bases its various causes of action on Defendants' alleged refusal to offer a reasonable settlement sum to Scott Malloch, and Defendants' initiation and maintenance of the cross-claims against the doctors. While Plaintiff is correct that this is not "a legal malpractice action" against the attorneys for the hospital's carrier, the actions of Plaintiff's counsel on behalf of Defendants are central to resolution of the issues generated by Counts II, III, and IV. Defendants state, and Plaintiff does not disagree, that Mr. DeTroy's testimony will address the issues raised by Plaintiff's claims. Thus, Plaintiff's assertion that Mr. DeTroy's testimony could not be relevant lacks merit.

Nor does Federal Rule of Evidence 702 provide a basis for this Court to strike Mr. DeTroy as an expert. The Court has broad discretion in admitting expert testimony under Rule 702. *McCabe v. Rattiner,* 814 F.2d 839, 843 (1st Cir.1987). In light of the issues relating to the propriety of the actions of Defendants' counsel, it appears at this point in the proceedings that an expert would assist the trier of facts "to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.

## III. *Motion for Leave to Designate Additional Experts*

■ At the scheduling conference held before the Magistrate on February 3, 1987, both sides agreed that Plaintiff would file its designation of expert witnesses on February 17, and Defendants would designate their experts by March 6. The Magistrate so ordered. Report of Conference of Counsel at 1. On February 17, Plaintiff submitted the names of three experts. Plaintiff did not include the names of Messrs. Simmons or Ballou. On March 6, Defendants submitted the names of the experts they intended to call, Mr. DeTroy's name and discovery information required under Fed.R.Civ.P. 26(b). Plaintiff did not object to Mr. DeTroy as an expert at that time, nor did Plaintiff indicate that it was necessary to call additional experts in light of the Rule 26(b) information provided by Defendants. This Court held a final pretrial conference on May 21, 1987, during which

the parties engaged in an exhaustive discussion concerning all outstanding discovery matters and all pending motions. At no time did Plaintiff's counsel mention that it intended to call additional witnesses, expert or otherwise. The report of the conference indicates clearly that:

> [a]fter discussion with counsel, the Court enlarged the discovery cut-off date herein to August 15, 1987, admonishing counsel that any and all discovery is to be finally complete on said date and indicating that under no circumstances will discovery remaining after that date be permitted to delay commencement of trial.

Report of Final Pretrial Conference and Order at 2. On July 14, approximately one month prior to the discovery cut-off date, Plaintiff sent a letter *to Defendant's counsel* stating that it intended to call Mr. Simmons as an expert witness. Plaintiff did not, however, file *with the Court* any further designation of expert witnesses nor any motion to be permitted to designate additional experts. Defendants' replied to Plaintiff's letter on July 17, and made their objections to Plaintiff's intentions very clear.[1]

In late July, Defendants notified Plaintiff that they would take the deposition of Mr. Ballou, who had previously been identified by Plaintiff as a "fact" witness. Plaintiff never revealed prior to or during the deposition that it intended to call Mr. Ballou as an expert witness. In fact, Plaintiff did not notify Defendants or this Court that it wished to call Mr. Ballou as an expert until August 14—the day before the discovery cut-off date.

This Court has noted previously that the exclusion of expert testimony under circumstances similar to those presented here is usually viewed as the extreme sanction for dilatory conduct or inadvertent delay in the prosecution of trial preparations and the development of testimony. *Stacey v. Bangor Punta Corp.*, 107 F.R.D. 779, 782 (D.Me.1985) (*citing Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, 99 (3d Cir.1977)). Moreover, such exclusion should be avoided whenever it is otherwise possible to alleviate the prejudice occasioned by late disclosure of the testimony. *Stacey v. Bangor Punta Corp.*, 107 F.R.D. at 782 (*citing Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977)). Courts have considered several factors in determining whether a witness should be excluded:

> [b]ad faith on the part of the party seeking to call witnesses not listed in his pretrial memorandum; ability of the party to have discovered the witnesses earlier; validity of the excuse offered by the party; willfulness of the party's failure to comply with the Court's order; the party's intent to mislead or confuse his adversary; and finally, the importance of the excluded testimony.

*Pennypack Woods*, 559 F.2d at 904 (citations omitted). The Court went on to delineate four "basic considerations" underlying the decisions on the point:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Id.* at 904–05 (citations omitted).[2]

## A.

Applying those "factors" found in case law to the case at hand, the Court finds

---

1. The letter reads, in part:

   > I am most surprised and dismayed that almost five months to the day after the Court imposed deadline for the designation of expert witnesses, you spring upon me the news that Jack Simmons will offer expert testimony at trial. Over my dead body and most strenuous objection will this occur.... The only thing you ever told me about Jack Simmons

   before your July 14, 1987 letter was that he may be called as a fact witness. I object and will continue to object strenuously and most vigorously to any effort on plaintiff's part to elicit expert testimony from Jack Simmons.

2. The First Circuit has stated that, of the four basic considerations set out in *Pennypack Woods*, "the two most important factors to be considered are the prejudice and surprise suf-

that while there is no direct evidence of bad faith on the part of Plaintiff, it is clear that Plaintiff was able to discover the expert witnesses in question prior to August 14. Plaintiff had, in fact, named them as fact witnesses, and they were presumably available for interview by Plaintiff's counsel which would have disclosed their capacity as expert witnesses herein. Further, Plaintiff offers absolutely no excuse for the tardiness of its motion, and there is evidence that Plaintiff intended to mislead or confuse Defendants about these individuals as expert witnesses. For instance, Defendants notified Plaintiff on July 22 that Defendants intended to depose Mr. Ballou on August 10 regarding those facts about which he might testify. At no time before or during the deposition did Plaintiff's counsel inform Defendants that Plaintiff planned to call Mr. Ballou as an expert. Nevertheless, just four short days after the deposition, Plaintiff filed this motion. It is hard to escape the conclusion that Plaintiff purposefully delayed notifying Defendants of its intention to call Mr. Ballou as an expert until *after* Defendants had taken the deposition. Finally, Plaintiff has not offered any information whatsoever regarding the importance of the proposed expert testimony of Mr. Ballou.

### B.

Plaintiff does not fare any better under the "basic considerations" articulated in *Pennypack Woods*. First, the prejudice suffered by the Defendants would be great. Defendants have diligently undertaken all of their extensive discovery for the past six months on the well-founded expectation that Plaintiff would offer the expert testimony of three witnesses previously identified by Plaintiff. Defendants have prepared their defense in light of the expected testimony of these witnesses. Now, just weeks before trial, Plaintiff seeks to include two additional experts.

Not only will Defendants have to bear the considerable time and financial burdens

fered by the opposing party and that party's ability to cure the prejudice." *Johnson v. Web-*

of deposing these experts, but Defendants will also have to reevaluate all of the evidence gathered over the course of the discovery period. Witnesses—especially experts—do not testify in a vacuum. Their testimony relates to all the other evidence produced at trial. To add two new experts could change significant contours of the defense. Whether that was Plaintiff's intent, or an unintentional consequence of Plaintiff's action, the effect is nevertheless the same.

Plaintiff argues that Defendants were not surprised by the designation of Mr. Simmons, because Plaintiff had sent a letter to Defendants in mid-July indicating Plaintiff's intention. Defendants replied to Plaintiff's letter immediately, and expressed their opposition to the designation. Defendants heard nothing more from Plaintiff about calling Mr. Simmons as an expert until Plaintiff filed its motion on the day before the discovery deadline. In this instance, simply sending a letter to the other side is not sufficient to avoid surprise; under the Rules and order of this Court, Plaintiff was required to formally designate the expert witnesses before Defendants were required to anticipate production of the witnesses at trial. As both parties know well, leave of Court is necessary to designate experts after the established date for doing so has passed. For all Defendants knew, Plaintiff had decided to drop the matter in the face of Defendants' objections. Certainly, Defendants could not be expected to rearrange their discovery schedules and incur the expense of deposing experts until the Court granted Plaintiff's motion. If Plaintiff had made its motion in mid-July, Defendants may have been able to prepare their case by the end of the discovery period. By waiting until August 14, however, Plaintiff made certain that Defendants could not depose Mr. Simmons and prepare their case adequately within the firmly established discovery period.

*ster,* 775 F.2d 1, 7 n. 7 (1st Cir.1985).

Plaintiff also argues that Defendants were not surprised by the designation of Mr. Ballou, since Defendants had deposed Mr. Ballou "well within the discovery deadline." Plaintiff's Motion for Leave to Designate Additional Experts at 3. This argument is not persuasive on the facts. Plaintiff indicated to Defendants only that Mr. Ballou was a fact witness. Plaintiff never told Defendants that Mr. Ballou would be called as an expert before or during Mr. Ballou's deposition on August 10. It was not until August 14, the eve of the discovery deadline, that Defendants were notified of Plaintiff's intention to call Mr. Ballou as an expert. Of course, Plaintiff's delay in designating Mr. Ballou as an expert prevented Defendants from investigating Mr. Ballou's expertise or opinions, since Defendants had no knowledge at the time of the deposition that Mr. Ballou would be called as an expert. The Court can only conclude that the Plaintiff concealed its intention to call Mr. Ballou as an expert in order to disadvantage the Defendants in the discovery process.

### C.

Besides the fact that Plaintiff's conduct in bringing this motion at such a late date causes surprise to Defendants, it appears that Defendants would be hard-pressed to cure the prejudice. Defendants could reasonably contend that they would be forced to reopen their discovery and perhaps call new experts. The expense and effort involved would obviously be substantial. In effect, Defendants would be forced to bear the cost of Plaintiff's delay—a state of affairs which this Court will not tolerate on the facts of this case.

### D.

This case is almost one-and-one-half years old. As long ago as August 1986, Plaintiff argued that a delay "would be prejudicial to Plaintiff" and that Plaintiff was "entitled to pursue the action without further delay." Plaintiff's Memorandum in Opposition to Defendants' Motion for Reconsideration at 2. But now the Plaintiff asks the Court to either disadvantage the Defendants at trial or to further delay the trial because of late action on the part of Plaintiff.

The Court has a busy, closely scheduled docket, and this case has already been scheduled on the October–November 1987 Trial List. To permit Plaintiff to add two additional experts would require the Court to remove the case from that list and accelerate the trial dates of other cases. Such a result would be unfair to the parties in those other cases, where the litigants have made steady and systematic progress in their pretrial preparations. As the First Circuit recently noted: "The day has long passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience. The processing of cases must proceed expeditiously if trials are to be held at all." *Damiani v. Rhode Island Hospital,* 704 F.2d 12, 16 (1st Cir.1983). And, as the Court has only recently admonished: "The Federal Rules must be construed to secure not only the 'just' but the 'speedy' determination of every action. Fed.R.Civ.P. 1. A litigant who desires to avail himself of the benefices [sic] of the rules *has an obligation to employ reasonable diligence in doing so.*" *Real v. Hogan,* 828 F.2d 58, 63 (1st Cir.1987) (emphasis added).

### E.

Plaintiff had numerous opportunities to alert this Court and Defendants about a genuine need to select additional experts. Nevertheless, it repeatedly failed to do so, and waited until the last moment to file its motion. There can be only two reasons for such behavior: either Plaintiff intentionally ignored the Court's scheduling order and attempted to surprise Defendants, or Plaintiff failed to prepare its case carefully until the very end of the discovery period. For either reason, the Court is not inclined to delay the trial, to require Defendants to incur additional expenses, or to disrupt this Court's trial schedule.

The Court is aware that there are instances in which designation of all experts by a certain date is impossible, and the Court has allowed discovery to continue

where the parties have made their best efforts to comply with the Court's order. *Murphy v. Frank Adam, Inc.*, 107 F.R.D. 744, 747 (D.Me.1985). Here, however, despite the Court's admonitions in May that all discovery was to be completed by August 15, and that discovery remaining after that date would not be permitted to delay commencement of trial, Plaintiffs withheld information from Defendants until August 14. By its actions, Plaintiff insured that discovery could not be completed within the deadline set by this Court. Further, Plaintiff has not offered any excuse for its failure to comply with the scheduling order, and provides no reasons why the proposed expert witnesses are necessary for its case.

Accordingly, Plaintiff's Motion to Strike Mr. DeTroy as an Expert Witness and Plaintiff's Motion for Leave to Designate Additional Experts are each hereby DENIED.

So ORDERED.

See also, D.C., 117 F.R.D. 19.